# IN THE SUPREME COURT OF TEXAS

══════════
No. 18-0068
══════════

WARNER BROS. ENTERTAINMENT, INC.;
WARNER BROS. TECHNICAL OPERATIONS, INC. D/B/A WARNER BROS. ADVANCED
DIGITAL SERVICES; TMZ PRODUCTIONS, INC.; EHM PRODUCTION, INC. D/B/A
TMZ; TMZ.COM; AND ELIZABETH MCKERNAN, PETITIONERS,

v.

ROBERT JONES, RESPONDENT

══════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS
══════════════════════════════════════════

**Argued September 19, 2019**

CHIEF JUSTICE HECHT, joined by JUSTICE GREEN and JUSTICE BLACKLOCK, dissenting.

Former Dallas Cowboy football star Robert Jones sued celebrity news website TMZ for publishing a defamatory story that Jones had threatened his cousin, Theodore Watson, for refusing to murder Jones' agent. The Texas Defamation Mitigation Act—*DMA*[1]—provides that "[a] person may maintain an action for defamation only if: (1) the person has made a timely and sufficient request for a correction, clarification, or retraction from the defendant"—a *Request*—"or (2) the defendant has made a correction, clarification, or retraction"—a *Change*.[2] The Court concludes that

---

[1] TEX. CIV. PRAC. & REM. CODE §§ 73.051–73.062.

[2] § 73.055(a).

Jones' lawyer's six-sentence press release issued shortly after TMZ published its story amounted to a Request and that TMZ's four-sentence story Update amounted to a Change. I disagree and therefore respectfully dissent.

## I

The long-standing law of this state requires a claimant to mitigate damages if the claimant can do so with "trifling expense or with reasonable exertions".[3] "Damages awarded for defamatory statements may be mitigated by factors such as public apology, correction, or retraction."[4] The DMA, passed in 2013, "provide[s] a method for a person who has been defamed by a publication or broadcast to mitigate any perceived damage or injury."[5] The Act is modeled on the Uniform Correction or Clarification of Defamation Act,[6] which the Uniform Law Commission adopted in 1993.[7] The Uniform Act's prefatory note explains that because "harm to reputation can often be cured by other than money damages", the law should "provid[e] strong incentives . . . to correct or clarify an alleged defamation as an alternative to costly litigation."[8] State retraction statutes had been

---

[3] *Walker v. Salt Flat Water Co.*, 96 S.W.2d 231, 232 (Tex. 1936). "[E]ven in tort cases, plaintiffs have an obligation to mitigate damages before trial, and defendants have the ability to reduce their liability by paying the claimed damages before trial." *JCB, Inc. v. Horsburgh & Scott Co.*, ___ S.W.3d ___, ___ (Tex. 2019).

[4] *Cain v. Hearst Corp.*, 878 S.W.2d 577, 582 (Tex. 1994); *accord Diamond Shamrock Ref. & Mktg. Co. v. Mendez*, 844 S.W.2d 198, 210 (Tex. 1992).

[5] § 73.052.

[6] S. Comm. on State Affairs, Bill Analysis at 1, Tex. H.B. 1759, 83rd Leg., R.S. (2013) ("In 1993, the Uniform Law Commission adopted the Uniform Correction or Clarification of Defamation Act which this bill [is] patterned after.").

[7] UNIF. CORR. OR CLARIFICATION OF DEFAMATION ACT (NAT'L CONFERENCE OF COMM'RS ON UNIF. STATE LAWS 1993) [hereinafter UNIF. ACT].

[8] UNIF. ACT prefatory note.

2

"largely ineffective", according to the Commission, "because they most often appl[ied] to a narrow range of cases and they [did] not create sufficient incentives on both parties, the plaintiff and the defendant, to come to an agreement regarding retraction."[9]

The DMA provisions implicated by the Court's decision track the Uniform Act, with some differences in wording. Both Acts apply broadly to any "claim for relief, however characterized, from damages arising out of harm to personal reputation caused by the false content of a publication"[10] and to all "forms of transmitting information."[11] Importantly, just like its counterpart in the Uniform Act, § 73.055(a) imposes conditions before litigation can proceed: "[a] person may maintain an action for defamation only if": (1) the person has made a "timely and sufficient" Request; or (2) the defendant has made a Change.[12] The comments to the Uniform Act explain the reason for this either/or test: "The Act is intended to encourage early corrections or clarifications . . . ."[13] "[A] plaintiff need not go through the formality of requesting a correction or clarification where the publisher has already voluntarily made a correction or clarification."[14] Section 73.055(a) thus functions as a toll booth. To proceed down the highway to the courthouse,

---

[9] *Id.*

[10] § 73.054(a); *see* UNIF. ACT § 2(a).

[11] § 73.054(b); *see* UNIF. ACT § 2(b).

[12] § 73.055(a); *see* UNIF. ACT § 3(a).

[13] UNIF. ACT § 3 cmt.

[14] *Id.*

the plaintiff must have either made a timely and sufficient Request or the defendant must have paid

the toll for the plaintiff through a voluntary Change.

A Request "is timely if made during the period of limitation for commencement of an action

for defamation",[15] which is one year.[16] To be sufficient, a Request must:

> (1)　[be] served on the publisher;
>
> (2)　[be] made in writing, reasonably identif[y] the person making the request, and [be] signed by the individual claiming to have been defamed or by the person's authorized attorney or agent;
>
> (3)　state[] with particularity the statement alleged to be false and defamatory and, to the extent known, the time and place of publication;
>
> (4)　allege[] the defamatory meaning of the statement; and
>
> (5)　specif[y] the circumstances causing a defamatory meaning of the statement if it arises from something other than the express language of the publication.[17]

These rigid and precise requirements further the Act's twin goals of damages mitigation and

litigation avoidance. They ensure that the defendant has the information it needs to consider a

Change. A Change that is timely and sufficient can preclude recovery of exemplary damages,[18] and

a Request starts the clock on the defendant's time for doing so.[19] It is therefore essential that the

defendant understand that a communication from the plaintiff is intended to be a Request.

---

[15] § 73.055(b).

[16] TEX. CIV. PRAC. & REM. CODE § 16.002(a).

[17] § 73.055(d).

[18] §§ 73.057–73.059.

[19] § 73.057(a).

4

The Court observes correctly that unlike a Request, a Change need not be timely or sufficient to pay the plaintiff's fare through the § 73.055(a) toll booth. But it misunderstands the significance of that distinction. The Act does not leave it to judges to make up their own minds whether a communication amounts to a Change that would get the plaintiff through the courthouse door. In fact, the Act does not contemplate disputes about whether a communication is an attempted Change. The Act gives the defendant a choice: wait to see whether the plaintiff makes a Request or preempt the plaintiff with a voluntary Change. The trade-off is that a Change allows the plaintiff to proceed in court, but if it is timely and sufficient, then it will limit the plaintiff's damages. Here is the crux: the Act requires the defendant to give the plaintiff written notice of its intent to rely on a Change within a specified time.[20] The Act does not contemplate judicial decision-making about whether a Change has been made because a defendant who has voluntarily made a Change to limit the plaintiff's recovery will have given the notice required by the statute. Under the Act, a Change must be intentional.

The Court's decision today not only reads the stringent sufficiency requirements for a Request right out of the statute, but under the precedent it establishes, every future defamation plaintiff will claim a casual tweet or website posting as a Change that gets them through the § 73.055(a) toll booth. The Act's intricate design has been destroyed.

## II

Jones' duty to mitigate damages by making a timely and sufficient Request attached when TMZ published this story:

---

[20] § 73.058(a).

5

# EX-SUPER BOWL CHAMP
# SUSPECT IN POLICE INVESTIGATION
## Allegedly Tried to Hire Hit Man

[photograph of Jones]

A former **Dallas Cowboys** linebacker has been named the primary suspect in a police investigation in Cleveland after allegedly trying to hire a hit man to take out his agent . . . this according to a police report obtained by **TMZ Sports**.

The man at the center of the case is **Robert Jones** – a 1st round pick in the '92 NFL Draft who went on to become a Pro Bowler and won 3 Super Bowls with the Cowboys.

According to the document, a 47-year-old man named Theodore told police that Jones approached him and tried to hire Theo to take out Jones' agent.

Theo told cops he refused – and Jones (who's also 47-years-old) – responded by saying he is a "gangster" and he would make Theodore "disappear."

Theodore told cops he's afraid and fears for his personal safety because he believes Jones will make good on his threat.

So far, Jones has NOT been arrested or charged with a crime. We reached out to Jones several times for comment – so far, no word back.

Boiled down, the statutory requirements for a sufficient Request are that it (i) be written, (ii) identify "with particularity" the false and defamatory statements and explain why they are defamatory, and (iii) be served on the publisher.[21] The only writing from Jones that could arguably

---

[21] *See* § 73.055(d).

count[22] is this email and press release from Jones' lawyer, Nicholas Bressi, to TMZ reporter McKernan:

> Attached please find Mr. Jones' press release for this matter. The officer investigating the complaint is unavailable until later this week so I don't have anything further to report on that matter at this time.
>
> Thank you,
> [Bressi's professional contact information]

> **PRESS RELEASE**
>
> RE: ROBERT JONES AND FALSE POLICE REPORT FILED BY
> THEODORE WATSON, JR.
>
> From: Nicholas S. Bressi, counsel for Robert Jones
>
> Robert Jones deeply regrets that a distant relative has filed a false police report against him. Robert Jones absolutely denies all accusations contained within the false report filed by Mr. Watson and Mr. Jones is in the process of filing his own complaints with law enforcement authorities to address the situation. Robert Jones and his agent have a wonderful relationship and there is not one word of truth contained in the report filed by Mr. Watson.
>
> Mr. Watson has recently been attempting to extort money from Mr. Jones and has been harassing Mr. Jones and his family for the past several months. Mr. Watson received a cease and desist letter from Mr. Jones' lawyer last week and after receiving that letter apparently Mr. Watson decided to escalate his extortion attempts by filing a false police report against Mr. Jones then circulating the false report to the media.
>
> Robert Jones is confident that when all the facts are revealed through the investigation of this matter that his name will be cleared and Mr. Watson's claims will be proven to be without merit.

---

[22] Jones urges his original petition initiating this lawsuit as a sufficient Request, but we need not decide whether a petition can qualify because Jones' was not timely. A timely request must be "made during the period of limitation for commencement of an action for defamation." § 73.055(b). A Request is made when it "is served on the publisher". § 73.055(d)(1). TMZ was not served with Jones' original petition until several weeks after limitations had run.

Thus, the six-sentence press release states:

- Jones deeply regrets that a distant relative, Watson, filed a false police report; Jones denies its accusations; and he will be filing his own complaints with law enforcement.

- Jones and his agent have a wonderful relationship.

- Watson's harassment of Jones and his family and extortion efforts escalated when he got a cease-and-desist letter from Jones' lawyer.

- Jones is confident the facts will clear his name and prove Watson's claims meritless.

This, the Court concludes, is a request for clarification. The Court explains that a Request need not actually use the word "request". But not only does the press release not use the word; it makes no request. The press release does not ask TMZ, or anyone else for that matter, to do anything at all. It denies Watson's accusations and explains his motives. The Court states that the press release "clearly communicated Jones's desire that the false allegations in the article be removed or revised."[23] That can be true only if Jones' denial of the statements TMZ reported in its story is a request for clarification. That, then, is the Court's holding: denying a statement mitigates damages. This, of course, is nonsense and eviscerates the DMA.

Under the Act, it is vital that the defendant know that a communication is intended to be a Request *at the time it is made* because deadlines for making a Change or requesting more information from the plaintiff run from the defendant's receipt of it.[24] Not only does the press release fail that test, Jones did not even allege that it was a Request in his original petition. Undeterred, the

---

[23] *Ante* at 15–16.

[24] §§ 73.056(a), 73.057(a).

8

Court scavenges the record for evidence that could support characterization of the press release as a Request now, six years after it was issued. The Court points to a phone call in which Bressi told McKernan that Watson had been harassing Jones for money and a follow-up email from McKernan to Bressi forwarding the police report Watson had filed. It says that the defamatory publication was "known to the reporter"[25] and that the defamatory meaning of the statements in it "is self-evident".[26] The Court says "[n]othing more is required"[27] to satisfy the statutory requirements for a Request, but under its analysis, nothing *at all* is actually required.

The Court reasons that if TMZ had doubts about the sufficiency of the press release as a Request, it had a statutory burden to file a challenge within 60 days of being served with citation. Jones has not made this argument since filing suit, and so TMZ has never had a chance to address it. But in any event, a defendant cannot doubt whether a communication is a sufficient Request unless it has reason to believe that the communication was intended to be a Request. Today's decision imposes a duty on publishers to inquire about every communication from a potential plaintiff, no matter what it says.

## III

McKernan herself understood the press release to be a Request, the Court continues, and issued an update—a Change. The Update, in its entirety, said this:

> ***UPDATE***_____

---

[25] *Ante* at 16.

[26] *Id*.

[27] *Id.*

9

**8:21 AM PT** – Jones says the hit man allegations are complete B.S. – and insists he's got a great relationship with his agent.

The former NFL star just issued a statement saying the accuser – a distant relative – "has filed a false police report" – and that he "absolutely denies" all allegations.

Jones says he plans on taking legal action of his own against Theodore – and says the guy has "recently been attempting to extort money" from him and his family.

As far as the allegation that he tried to hire a hit man to take out his agent, Jones says the two have a "wonderful relationship" and the notion that he wants him dead is completely false.

As explained in Part I, the Update cannot be a Change under § 73.055(a) because it fails the sole statutory test: TMZ did not give notice of its intent to rely on the Update as a Change.[28]

That should be the end of the analysis because Jones did not allege in the trial court that he reasonably believed the Update to be a Change that made a Request unnecessary. He alleged the opposite. His original petition states that the Update was "not a retraction or correction, but a mere supplement" and that it was an actionable, libelous broadcast, just like the original story. The petition complains specifically that the Update failed to mention that Watson filed the police report after receiving a cease-and-desist letter from Jones, which Bressi had told McKernan about in a phone call after the initial publication. Jones had an opportunity to respond to TMZ's motion to dismiss under the DMA, but he did not urge the Update as a Change even then. It is an argument invented for appeal, but the Act does not allow appellate judges to make this decision in the first instance.

---

[28] § 73.058(a).

Ignoring Jones' pleadings, the Court reasons that the Update qualifies as a Change because it "(1) provid[ed] Jones's side of the story (at least in part) and (2) add[ed] clarifying facts about the central figures in the story."[29] The Update did add facts; that was its purpose. And it told Jones' side of the story by copying from Jones' press release. But once again the Court disregards the statutory text: publishing facts from a requestor is a Change under the DMA only if it is not itself defamatory.[30] The Court's holding is that the DMA's purpose of mitigating defamation damages is satisfied by issuing a clarification that does not mitigate damages but instead adds to the defamation.

Finally, no reasonable plaintiff could believe that the Update was a Change because it does not actually change or clarify anything in TMZ's initial story. It notes that Watson was "a distant relative" of Jones', but that fact does not change the defamatory meaning of the initial story. Jones and Watson's relationship might have been no more than an interesting coincidence. Nor does the assertion that Watson had been trying to extort money from Jones clarify whether Jones was or was not trying to have his agent killed.

In sum, the Court notes with satisfaction, "[t]he statute worked exactly as the Legislature intended—Jones promptly notified TMZ about the defamatory nature of its article, placing the ball in TMZ's court to take mitigating action in response."[31] Jones gave notice when the DMA required a Request. TMZ published an Update that changed nothing except, in Jones' view, to worsen the

---

[29] *Ante* at 14.

[30] § 73.057(b)(4).

[31] *Ante* at 15.

defamation. Nothing that either did mitigated Jones' damages, if it turns out he had any. And that is "exactly" what the Legislature intended.

## IV

The Court states that "[i]f suit is pending and the defendant did not receive a Request as required by Section 73.055, the statute also provides a time-limited process by which a defendant can secure automatic abatement of the lawsuit".[32] While that is true, the Court appears to suggest that abatement is a defendant's only remedy. But § 73.055(a) requires compliance to "maintain an action for defamation", and timely compliance is impossible once limitations has run. TMZ argues that in that situation, the DMA's plain language requires dismissal. The Court need not address the issue, but neither should it suggest that the issue does not exist.[33]

\* \* \* \* \*

Today, the Court effectively eliminates the long-standing rule that a plaintiff must mitigate damages before bringing a defamation claim. This would be wrong enough if the Court had merely changed a common law duty, but it gutted a Legislative enactment. In the constantly refreshed news cycle of today, under the Court's standards—or lack of standards—any Twitter message complaining of a story will be a Request, any response by the publisher a Change, and a plaintiff can

---

[32] *Ante* at 14 (cleaned up).

[33] The courts of appeals are split. *Compare Zoanni v. Hogan*, 555 S.W.3d 321, 328–330 (Tex. App.—Houston [1st Dist.] 2018, pet. filed) (2–1) (rendering judgment for the defendant on defamation claims for which the plaintiff had failed to make a Request before limitations had run), *with Hardy v. Commc'n Workers of Am. Local 6215 AFL-CIO*, 536 S.W.3d 38, 48 (Tex. App.—Dallas 2017, pet. denied) ("[W]e conclude a plaintiff who fails to make a timely and sufficient [Request] may not maintain or continue her suit in the face of a timely-filed motion to abate. The plaintiff's claim, however, is not subject to dismissal . . . .").

proceed without further effort. The DMA benefits no one. That is not the framework set forth in the Uniform Act or adopted by the Texas Legislature. I respectfully dissent.

_____
Nathan L. Hecht
Chief Justice

Opinion delivered: May 8, 2020