**Opinion issued July 19, 2018**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-16-00584-CV

————————————

**STEPHANIE MONTAGNE ZOANNI, Appellant**

**V.**

**LEMUEL DAVID HOGAN, Appellee**

---

**On Appeal from the 246th District Court**
**Harris County, Texas**
**Trial Court Case No. 2010-34811-B**

---

## O P I N I O N

This appeal requires us to determine whether the Defamation Mitigation Act allows defamation claims to proceed to the jury, over objection, when a plaintiff has not complied with the Act's requirements for those claims, and the compliance deadline has expired. The answer is no. We therefore reverse as to nine of the alleged

instances of defamation at issue in this appeal. Because we cannot determine what part of the damages awarded pertain solely to the remaining four allegedly defamatory statements (which Appellant Stephanie Zoanni does not challenge under the Defamation Mitigation Act), we reverse for a new trial as to those statements.

## Background

In this appeal, Zoanni challenges the jury's findings that she defamed her ex-husband, Lemuel David Hogan, on 13 occasions. Many of the statements at issue surround an alleged incident in 2005. Zoanni contends that, when members of a church's youth group came over to their house, Hogan peered through an attic vent at a young girl in the bathroom. Hogan says that he accidentally glanced through the vent while looking for something in the attic.

On March 7, 2014, Hogan's lawyers sent Zoanni a letter accusing her of defaming him. The letter identified two specific publications, which included three allegedly defamatory statements. Zoanni independently corrected one additional statement. Hogan sent Zoanni no other request for correction, clarification, or retraction. Hogan then sued Zoanni for defamation and to modify custody of their daughter.

Although Hogan's March 2014 letter referenced only 3 allegedly defamatory statements, on the eve of trial, Hogan amended his petition and included 13 allegedly defamatory statements in his proposed jury charge. When Hogan added these

allegedly defamatory statements to the jury charge, more than a year had passed since the alleged statements were made. Hogan does not argue that he only recently discovered the statements. Well more than 30 days had passed since Zoanni filed her original answer in this lawsuit.

Under the Defamation Mitigation Act and its statute of limitations,[1] Hogan had a full year to send Zoanni a timely and sufficient request for correction, clarification, or retraction as to each of the nine allegedly defamatory statements not referenced in his March 2014 letter and not independently corrected by Zoanni. But he did no such thing. He instead sought to recover on them, despite never requesting their correction, clarification, or retraction, and despite the lapsing of the year-long limitations period.

Zoanni sought a directed verdict on the basis that Hogan had failed to comply with the Defamation Mitigation Act with respect to the nine statements not identified in Hogan's 2014 letter and not independently corrected by Zoanni. The trial court ruled against her. Zoanni also objected to the jury charge, arguing that Hogan did not comply with the Defamation Mitigation Act with regard to the nine allegedly defamatory statements. She contended that it would be error to submit those

---

[1] *See* TEX. CIV. PRAC. & REM. CODE § 73.055(b); TEX. CIV. PRAC. & REM. CODE § 16.002(a).

instances of alleged defamation to the jury. The trial court overruled those objections.

The jury found all 13 statements to be defamatory. The trial court asked the jury to award damages for the first eight statements as a group, and the last five statements as a group. The jury awarded $900,000 in past and future injury to reputation and mental anguish for the first eight statements, and $1.2 million in past and future injury to reputation and mental anguish for the last five statements, for a total of $2.1 million in damages. The jury also found that these statements were made with malice but awarded no punitive damages. Zoanni filed a motion for new trial that again raised Hogan's failure to comply with the Defamation Mitigation Act.

On appeal, Zoanni argues that (1) because Hogan did not comply with the Defamation Mitigation Act with respect to nine alleged instances of defamation, the judgment should be reversed and rendered in her favor as to those nine allegedly defamatory statements; (2) the trial court erroneously failed to submit a mitigation instruction on damages, the damages award is not supported by sufficient evidence, and the award is too large and impermissibly includes punitive damages; (3) part of the judgment improperly penalizes Zoanni for her opinions; (4) there is not legally sufficient evidence that Zoanni published any of the complained-of police report statements; and (5) the trial court erroneously excluded testimony based upon the clergy privilege. We start with the Defamation Mitigation Act.

4

**Defamation Mitigation Act**

Zoanni argues that Hogan did not comply with and, at all relevant times, could no longer have complied with the Defamation Mitigation Act with respect to 9 of the 13 allegedly defamatory statements at issue. She contends that Hogan's failure to comply with the Defamation Mitigation Act bars his recovery as to these statements. We agree.

**A.      Standard of Review**

The interpretation of a statute is a question of law that we review de novo. *TIC Energy & Chem., Inc. v. Martin*, 498 S.W.3d 68, 74 (Tex. 2016). When interpreting a statute, the text is paramount. We thus interpret statutes in light of their plain language. *See Ineos USA, LLC v. Elmgren*, 505 S.W.3d 555, 563 (Tex. 2016). We seek to harmonize and effectuate all provisions of the statute. *See In re Office of Attorney Gen.*, 422 S.W.3d 623, 629 (Tex. 2013); *Meritor Auto., Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 90 (Tex. 2001).

**B.      Applicable Law**

To prove defamation, a private individual must demonstrate (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages, in some cases. *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 579 (Tex. 2017); *see*

*also Dall. Morning News, Inc. v. Tatum*, No. 16-0098, 2018 WL 2182625, at *3 (Tex. May 11, 2018).

A plaintiff must also comply with the Defamation Mitigation Act (DMA), TEX. CIV. PRAC. & REM. CODE §§ 73.051–062. The DMA applies to "a claim for relief, however characterized, from damages arising out of harm to personal reputation caused by the false content of a publication." *Id.* § 73.054(a).

The DMA makes clear that:

(a) A person may maintain an action for defamation *only if*:

   (1) the person has made a *timely and sufficient* request for a correction, clarification, or retraction from the defendant; or

   (2) the defendant has made a correction, clarification, or retraction.

*Id.* § 73.055(a) (emphasis added).

A request for a correction, clarification, or retraction is timely if it is "made during the period of limitation for commencement of an action for defamation," which is one year after the day the cause of action accrues. *Id.* §§ 16.002(a), 73.055(b); *see also Velocity Databank, Inc. v. Shell Offshore, Inc.*, 456 S.W.3d 605, 609 (Tex. App.—Houston [1st Dist.] 2014, pet. denied).

Even if the DMA request is timely, if it is not made within 90 days after the plaintiff receives knowledge of the publication, the plaintiff may not recover exemplary damages. TEX. CIV. PRAC. & REM. CODE § 73.055(c).

The DMA also sets forth specific requirements concerning the sufficiency of a request. A request is sufficient if it:

    (1) is served on the publisher;

    (2) is made in writing, reasonably identifies the person making the request, and is signed by the individual claiming to have been defamed or by the person's authorized attorney or agent;

    (3) *states with particularity the statement alleged to be false and defamatory* and, to the extent known, the time and place of publication;

    (4) alleges the defamatory meaning of the statement; and

    (5) specifies the circumstances causing a defamatory meaning of the statement if it arises from something other than the express language of the publication.

*Id.* § 73.055(d) (emphasis added).

Another provision of the DMA allows for abatement in certain instances:

A person against whom a suit is pending who does not receive a written request for a correction, clarification, or retraction, as required by Section 73.055, may file a plea in abatement not later than the 30th day after the date the person files an original answer in the court in which the suit is pending.

*Id.* § 73.062(a). If not controverted, the abatement begins 11 days after the plea is filed and continues until the 60th day after the request is served or a later day agreed to by the parties. *Id.* § 73.062(b), (c).

## C.    Analysis

This case presents an issue of statutory interpretation that is a matter of first impression in our Court. On the facts of this case—where Hogan did not comply

7

with the DMA and where, by the time he asserted the additional allegedly defamatory statements, the statutory deadlines had expired so compliance was no longer possible—the statute's plain language precluded the non-compliant defamation claims from proceeding to the jury. We need not address how the DMA applies in other circumstances.

The DMA allows a plaintiff to "maintain an action for defamation *only if*" (1) he sends a *timely and sufficient* request for correction, clarification, or retraction, or (2) the defendant nevertheless makes a correction, clarification, or retraction of any statement. TEX. CIV. PRAC. & REM. CODE § 73.055(a) (emphasis added); *see id.* § 73.055(d)(3). To be timely, a request must be sent within one year after the day the cause of action accrues—generally, within a year of the statement's publication.[2] *Id.* §§ 16.002(a); 73.055(b). To be sufficient, a request must identify each allegedly defamatory statement "with particularity." *Id.* § 73.055(d)(3). This "particularity" requirement contrasts with the statute's language (in the same sentence) permitting the time and place of publication to be identified "to the extent known." *Id.*; *Ineos*, 505 S.W.3d at 564.

---

[2] A cause of action for defamation generally accrues when a statement is published or circulated. *Velocity Databank, Inc. v. Shell Offshore, Inc*., 456 S.W.3d 605, 609 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). The discovery rule applies to toll that limitations period if the defamatory statement is inherently undiscoverable or not a matter of public knowledge. *Id.* Hogan did not assert the discovery rule.

Accordingly, for Hogan to maintain an action for defamation as to each statement at issue, he was required to send—within a year of each statement's publication—a request for correction, clarification, or retraction that identified, with particularity, the allegedly defamatory statement. Hogan did not timely satisfy this requirement and, by the time of the charge conference, he could no longer do so.

Only 4 of the 13 statements included in the jury charge met the statutory requirements. On March 7, 2014, Hogan asked Zoanni to retract three statements, and Zoanni independently corrected one other statement. Zoanni concedes that the DMA was satisfied for these four statements.[3]

It is undisputed that Hogan never asked Zoanni to correct, clarify, or retract any of the other nine statements. Nor did Zoanni do so on her own accord. And when Hogan proposed including the nine additional statements in the jury charge, it would

---

[3] We list these four statements below in the "Opinions Versus Facts" section of our opinion. In light of Zoanni's concession, we do not address whether Hogan's March 2014 letter satisfies the DMA.

The dissent points to Hogan's March 2014 letter and the parties' 2014 Rule 11 Agreement, suggesting that Zoanni had prior notice of some of the nine allegedly defamatory statements for which Hogan never requested correction, clarification, or retraction. But neither the March 2014 letter nor the Rule 11 Agreement identified—with particularity or otherwise—any of the nine statements at issue. To the contrary, Hogan's March 2014 letter referenced (1) an email that contained two allegedly defamatory statements and (2) "one" allegedly defamatory blogpost (identified by the post's title). The Rule 11 Agreement, for its part, identified the sources of the three allegedly defamatory statements referenced in Hogan's 2014 letter. Notably, only a few of the statements at issue in this appeal even appeared on Zoanni's blog. And the Rule 11 Agreement was not (and did not waive the requirement for) a DMA-compliant request for correction, clarification, or retraction.

9

have been impossible for him to comply with the statute: the year-long period to send a timely request had lapsed for all of the nine statements.[4] TEX. CIV. PRAC. & REM. CODE §§ 16.002(a), 73.055(b).

Under the DMA's plain language, Hogan may not maintain a defamation action as to those nine statements. Hogan could "maintain an action for defamation *only if*" he *timely* requested correction, clarification, or retraction of each specific statement. *See id.* § 74.055(a) (emphasis added). By the time of trial, he did not and could no longer do so for any of the nine alleged instances of defamation. *Id.* § 73.055(a) (requiring the identification of each statement "with particularity"); *id.* § 73.055(b) (requiring a timely request). Those claims should not have proceeded to the jury over Zoanni's objection. The United States Court of Appeals for the Fifth Circuit has reached the same conclusion. *See Tubbs v. Nicol*, No. 16-20311, 675 F. App'x 437, 439 (5th Cir. 2017) ("If a plaintiff does not make such a request before the statute of limitations expires, she may not state a claim for defamation.").

Even so, some courts have concluded, and Hogan contends, that the statute allows abatement—not dismissal—as a possible remedy. *See Hardy v. Commc'n Workers of Am. Local 6215*, 536 S.W.3d. 38, 47 (Tex. App.—Dallas 2017, pet. denied) ("If the plaintiff files suit without making a timely and sufficient request for a correction, clarification, or retraction, the defendant may move to have the suit

---

[4]     Neither party argues that compliance was still possible.

abated until the request is made. . . . There is, however, nothing in these statutory provisions or the legislative history to suggest it is the purpose of the DMA to deprive a plaintiff of a defamation claim based on a failure to request a correction, clarification, or retraction."); *Warner Bros. Entm't Inc. v. Jones*, 538 S.W.3d. 781, 813 (Tex. App.—Austin 2017, pet. filed) (similar). They base this conclusion on section 73.062 of the DMA, which provides:

> A person against whom a suit is pending who does not receive a written request for a correction, clarification, or retraction, as required by Section 73.055, may file a plea in abatement not later than the 30th day after the date the person files an original answer in the court in which the suit is pending.

TEX. CIV. PRAC. & REM. CODE § 73.062(a).

Interpreting the DMA to allow only abatement in this circumstance would contravene the statute's plain text. The abatement provision has a straightforward application (and is not superfluous) before the year-long period to satisfy section 73.055 has passed. During that period, a plaintiff could still comply with section 73.055, even if he had not yet done so. Then abatement would make sense: one may seek to abate while the plaintiff has a chance to comply with section 73.055.

But where, as here, the opportunity to comply with section 73.055 has passed, the statute does not support abatement as the proper procedure. The DMA is clear that one may maintain an action *only if* he sends a timely and sufficient request for correction, clarification, or retraction. TEX. CIV. PRAC. & REM. CODE § 73.055. Once

11

the deadline has passed, a plaintiff cannot maintain an action. If the court were powerless to grant a directed verdict (or sustain objections) under these circumstances, then what would happen? Would the court abate eternally? This result would not effectuate the statute's terms.

Our conclusion is bolstered by the fact that, when Hogan added the nine other allegedly defamatory statements, abatement was also no longer an option. *Id.* § 73.062(a) ("A person. . . may file a plea in abatement *not later than the 30th day after the date the person files an original answer . . . .*") (emphasis added). Under these circumstances, the statute would offer no relief at all. Section 73.055 does not allow a plaintiff to send a request for correction, clarification, or retraction that identifies only certain statements; avoid abatement with regard to the identified statements due to that request; later amend his claims to contend that additional statements were defamatory; avoid abatement because the time to abate has lapsed; and then proceed to a jury on all statements despite failing to comply with section 73.055.

On its face, section 73.062 does not render meaningless section 73.055's concrete requirement that a plaintiff can maintain an action "only if" he complies with the DMA. Nor does section 73.062 suggest that failure to request an abatement—a request that, under the DMA, a defendant "may" make—somehow excuses noncompliance with the DMA. Abatement is not the exclusive option (or,

12

in this case, even a possible option) when one has failed to and can no longer make a timely and sufficient request as the DMA requires.

Likewise, the statutory language refutes Hogan's argument that the loss of exemplary damages is the remedy for failure to comply with the DMA. *Cf. Warner Bros. Entm't*, 538 S.W.3d at 812 ("[W]hen the statute is read in its entirety, giving effect to all its provisions and considering the purpose of the statute, the consequence for failing to timely make a request is not dismissal, but rather preclusion of recovery of exemplary damages."). The DMA specifically addresses exemplary damages: it provides that a plaintiff may seek exemplary damages if he requests correction, clarification, or retraction *within 90 days* of learning about the publication of an allegedly defamatory statement. TEX. CIV. PRAC. & REM. CODE § 73.055(c). Conversely, the DMA provides a *one-year* period to timely send a retraction request and satisfy the DMA's terms. So a request sent after 90 days from when the plaintiff learns of the statement, but before 1 year from when a defamation claim accrues, allows a plaintiff to proceed with a defamation claim. In that circumstance, the plaintiff loses the right to recover exemplary damages but not the right to maintain his claim. It cannot be that the remedy for failing to send a request throughout the entire permissible year-long period (in direct contravention of the statutory requirement) is the loss of exemplary damages, when the statute provides that a

plaintiff loses the right to those damages by failing to send a request in the 90-day time period.

We are also unpersuaded by Hogan's argument that the DMA does not bar his claims because Zoanni did not challenge the sufficiency or timeliness of his March 2014 letter under section 73.058(c). *Id.* § 73.058(c) ("If a defendant intends to challenge the sufficiency or timeliness of a request for a correction, clarification, or retraction, the defendant must state the challenge in a motion to declare the request insufficient or untimely served not later than the 60th day after the date of service of the citation."). In this appeal, Zoanni is not challenging the sufficiency or timeliness of Hogan's March 2014 request for correction, clarification, or retraction. She makes no argument as to the three statements identified in that letter. To the contrary, she concedes that Hogan satisfied the DMA with regard to those statements.

She instead argues that Hogan did not satisfy the DMA with regard to nine other statements. It is undisputed that Hogan's March 2014 letter did not identify those nine statements at issue in this appeal. When Zoanni received the March 2014 letter, she had no way to know that Hogan would later allege other instances of defamation. The DMA did not require Zoanni to divine that Hogan would later assert that she also defamed him in other statements. To the contrary, the DMA required Hogan to send requests for correction, clarification, or retraction that identified "with

14

particularity" the statements he alleges are defamatory. *Id.* § 73.055(d). He did not do so with regard to these nine statements.

Finally, the dissent's view that one request for correction, clarification, or retraction (of a particular publication) enables a plaintiff to proceed on any new or distinct defamation claims against the same defendant cannot be reconciled with the statute's specificity requirement. Section 73.055 requires a plaintiff's request to state "*with particularity the statement alleged to be false and defamatory* and, to the extent known, the time and place of publication." *Id.* § 73.055(d) (emphasis added). It also requires the request to allege the defamatory meaning "of *the statement*," and to "specif[y] the circumstances causing a defamatory meaning of *the statement* if it arises from something other than the express language of the publication." *Id.* (emphasis added); *see also id.* § 73.057(c) ("If a request for correction, clarification, or retraction has specified two or more statements as false and defamatory, the correction, clarification, or retraction may deal with the statements *individually* in any manner provided by Subsection (b).") (emphasis added).

The legislature could have included an exception to the specificity requirement. It could have said that identifying one statement with particularity would suffice to support other allegations of defamation against the same defendant. But it did not. The statute contains no exception to the specificity requirement when

a plaintiff happens to ultimately allege more than one instance of defamation—whether related or not—against the same defendant.

The dissent focuses on a single use of the word "action" and argues that "action" is distinct from "claim." *Id.* § 73.055(a) ("A person may maintain an action for defamation only if . . . ."). But the DMA's "applicability" provision states that the statute (and its requirement of a sufficiently specific and timely request for correction, clarification, or retraction) applies "to a *claim* for relief, *however characterized*, from damages arising out of harm to personal reputation caused by the false content of *a publication*." *Id.* § 73.054 (emphasis added).

The DMA's use of the word "action," read in the context of the statute as a whole, does not nullify the statute's requirement that a plaintiff must identify (in his request for correction, clarification, or retraction) allegedly defamatory statements with particularity. Nor does the term "action" allow a plaintiff to make an end-run around the statute's dictate that one may maintain an action for defamation only if he sends a timely and sufficiently specific request for correction, clarification, or retraction as to each allegedly defamatory statement. *See, e.g.*, *Jaster v. Comet II Const., Inc.*, 438 S.W.3d 556, 573 (Tex. 2014) (Willett, J., concurring) ("Because these tools for analyzing isolated words have limitations, context becomes essential to clarity."); *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002)

("[C]ourts should not give an undefined statutory term a meaning out of harmony or inconsistent with other provisions.").

We hold that Hogan cannot recover on the nine statements at issue. The trial court erred in submitting those claims to the jury over Zoanni's objection.

## Damages

Because we sustain Zoanni's challenge to 9 of the 13 statements at issue in this case, and because we cannot determine what part of the damages award is based on the 4 remaining statements, we reverse the entire damages award. We cannot determine the extent to which the damages award rests on legally invalid bases; nor can we evaluate the substance of Zoanni's arguments challenging damages premised on the collective bases of liability—some of which are not legally viable. In sum, we cannot be sure that reliance on invalid bases of liability exerted no significant influence on the jury's damages award. *See Indian Oil Co. v. Bishop Petrol. Inc.*, 406 S.W.3d 644, 660 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (where damages could not be allocated between amounts for which the defendant was liable and amounts for which he was not, remittitur was not a suitable remedy).

## Opinions Versus Facts[5]

For the four remaining statements in the case, we address Zoanni's contention that they represent opinions rather than facts, and thus that Hogan may not premise defamation claims on them. They are not statements of opinion.

An opinion cannot support a claim for defamation. *Dall. Morning News, Inc. v. Tatum*, No. 16-0098, 2018 WL 2182625, at \*3 (Tex. May 11, 2018); *Johnson v. Phillips*, 526 S.W.3d 529, 535 (Tex. App.—Houston [1st Dist.] 2017, pet. filed) (first citing *Neely v. Wilson*, 418 S.W.3d 52, 62 (Tex. 2013); then citing *Carr v. Brasher*, 776 S.W.2d 567, 570 (Tex. 1989) ("[A]ll assertions of opinion are protected by the first amendment . . . .")). To be actionable, a statement must assert a verifiable fact. *Tatum*, 2018 WL 2182625, at \*3; *Neely*, 418 S.W.3d at 62. We classify a statement as fact or opinion based on the statement's verifiability and the context in which the statement was made. *Tatum*, 2018 WL 2182625, at \*3 ("[E]ven when a statement is verifiable as false, it does not give rise to liability if the 'entire context in which it was made' discloses that it is merely an opinion masquerading as a fact."); *Bentley v. Bunton*, 94 S.W.3d 561, 581 (Tex. 2002). Whether a statement presents a fact or an opinion is a question of law to be decided by the court. *Johnson*, 526 S.W.3d at 535.

Zoanni contends that the following four statements are opinions:

---

[5]     Based on our above holding, we do not reach Zoanni's other arguments.

(1) From a Facebook post and blog: "Growing concerns for my baby girl!...What a good dad DOES NOT do: He doesn't film young girls in his youth group going to the bathroom and getting into the shower thru the bathroom air vent in his house (caught and admitted to) . . . ."

(2) From a blog: "In my Facebook blast I did several weeks ago I said he was caught and admitted to the camera in the bathroom. Let me be 100% clear, he was guilty, but did not admit to the camera in the bathroom but I know it was there. . . ."

(3) From Zoanni's email: "David Hogan still has severe issues. . . . Please tell me if you think it['s] right that a minister who is involved in child porn is put back into a church as children['s] pastor after one year visiting another pastor once a month and an online course as his rehab??"

(4) From Zoanni's email: "David Hogan still has severe issues... There is an open Sex Crimes case with Harris County Precinct 4, Case Number 13-98077. . . . I filed a report on him last summer."

In context, each statement presents a verifiable fact. Whether Hogan filmed girls in his youth group or admitted to filming them, was involved in child pornography, or was the subject of an open sex crimes case, are facts that are objectively verifiable. These are not statements of opinion. *See Tatum*, 2018 WL 2182625, at *3; *Johnson*, 526 S.W.3d at 536-40; *Neely*, 418 S.W.3d at 62.

We overrule Zoanni's third issue.

**Conclusion**

We reverse and render judgment that Hogan take nothing on his defamation claims premised on the nine statements barred by the DMA. We remand for further proceedings on the four statements remaining at issue (all of which are listed above in the "Opinion Versus Facts" section). *See* TEX. R. APP. P. 44.1(b).

Jennifer Caughey
Justice

Panel consists of Justices Jennings, Massengale, and Caughey.

Jennings, J., dissenting.