# IN THE SUPREME COURT OF TEXAS

══════════
No. 18-0944
══════════

LEMUEL DAVID HOGAN, PETITIONER

V.

STEPHANIE MONTAGNE ZOANNI, RESPONDENT

══════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIRST DISTRICT OF TEXAS
══════════════════════════════

**Argued September 15, 2020**

JUSTICE DEVINE announced the Court's judgment and delivered an opinion, in which JUSTICE GUZMAN, JUSTICE LEHRMANN, and JUSTICE BUSBY joined.

JUSTICE BOYD filed a concurring opinion.

CHIEF JUSTICE HECHT filed a dissenting opinion, in which JUSTICE BLACKLOCK and JUSTICE HUDDLE joined.

JUSTICE BLAND did not participate in the decision.

In this defamation case, we must determine whether the trial court properly denied a defendant's motion for directed verdict as to nine of thirteen allegedly defamatory statements. Under the Defamation Mitigation Act (DMA), a plaintiff "may maintain an action for defamation only if" the plaintiff makes a timely and sufficient statutory request for correction, clarification, or retraction from the defendant or if a defendant makes a correction, clarification, or retraction. *See*

TEX. CIV. PRAC. & REM. CODE § 73.055(a). The defendant asserts the statute's "only if" language is mandatory, creating a precondition to suit for each allegedly defamatory statement. The plaintiff claims the DMA is only a notice statute not meant to foreclose a plaintiff's timely filed cause of action. Rather, if a defendant believes statutory notice is lacking, the defendant must timely object or invoke the statutory abatement process. *See id.* §§ 73.058(c), .062.

The court of appeals generally agreed with the defendant, concluding that a request is a necessary predicate to submit each alleged instance of defamation to the jury and that the consequence of a plaintiff's failure to make the required request is dismissal of the underlying defamation claim. 555 S.W.3d 321 (Tex. App.—Houston [1st Dist.] 2018). Because the court concluded that only four of thirteen statements submitted to the jury in a nonsegregated jury question met the DMA's requirements, the court of appeals reversed and remanded for a new trial with respect to only those four defamation claims. We conclude, however, that the DMA prescribes the abatement of claims and loss of exemplary damages, rather than dismissal, and empowers the defendant to seek that relief. Because the DMA provides for abatement, not dismissal, and that remedy was available to the defendant when the plaintiff amended his complaint to add the nine disputed statements, the trial court did not err in denying the defendant's motion for directed verdict as to those claims. We accordingly reverse the court of appeals' judgment and remand the case to that court to consider unaddressed issues.

## I. Background

Plaintiff David Hogan is an executive pastor at a Houston church. In 2011, he divorced his wife, defendant Stephanie Zoanni, who was awarded primary custody of their child. After the divorce, Zoanni published a litany of statements online, to the police, and to Hogan's church

2

leadership stating he is a pedophile, pervert, and patron of child pornography. In a letter to Zoanni dated March 7, 2014, Hogan demanded that Zoanni "cease and desist all defamation of David Hogan's character and reputation." It additionally included statements of Zoanni's "lies, insinuations, and innuendos about [Hogan]'s character and mistreatment of women." The letter specifically referenced a February 5, 2014 email Zoanni sent to the General Secretary of the Assemblies of God and a blog post entitled "What good dad DOES NOT do."

After sending the letter, Hogan sued Zoanni, alleging causes of action for defamation, invasion of privacy, malicious prosecution, abuse of the child protective services process, and intentional infliction of emotional distress. The petition, filed on March 27, 2014, included references to the statements Hogan had made in his earlier letter and sought both actual and exemplary damages.

On April 15, 2016—ten days before trial—Hogan filed his seventh amended petition, which represented the claims that the jury ultimately considered. The amended petition retained only the defamation claims and added nine newly discovered defamatory statements not included in the prior petitions. The amended pleading invoked the relation-back doctrine for each new statement. *See* TEX. CIV. PRAC. & REM. CODE § 16.068. According to Hogan, because the nine added statements related to the same subject matter as the previously alleged defamatory statements, the statute of limitations did not defeat them. Zoanni never pled a limitations defense to the nine new statements. However, on the first day of trial, Zoanni filed a motion for directed verdict as to the newly added statements and declined the trial court's offer of an abatement. Zoanni argued that as to the new statements, Hogan failed to comply with the DMA's requirements, which obligate a plaintiff to provide a defendant with a timely and sufficient request

for correction, clarification, or retraction of each allegedly defamatory statement. Implicit in Zoanni's motion was the notion that a request must be made within the statute of limitations to be "timely." Because the newly proffered statements were made more than a year earlier, Zoanni contended it was no longer possible for Hogan to make a request that complied with the DMA's timeliness requirements as to those statements; hence, the new statements could not be included at trial. The trial court denied the motion for directed verdict and included all thirteen statements in the jury charge. The jury returned a verdict for Hogan totaling $2.1 million in actual damages.

A divided court of appeals reversed and remanded for a new trial on the original four statements alone, holding that Hogan could not recover damages for the nine new statements. 555 S.W.3d at 323–24. The court focused on the DMA's language that "[a] person may maintain an action for defamation only if . . . the person has made a timely and sufficient request for correction, clarification, or retraction from the defendant." *Id.* at 325 (emphasis omitted) (quoting TEX. CIV. PRAC. & REM. CODE § 73.055(a)(1)). In construing the language of the DMA's notice provision, the court of appeals concluded that Hogan could no longer make a timely request for the nine added statements, that he thus could not "maintain an action for defamation" based on those statements, and that they should not have been submitted to the jury over objection. *Id.* at 327. And while the DMA provides for abatement and an opportunity to cure when a plaintiff fails to provide a timely and sufficient request, the appellate court reasoned that abatement was no longer available under the statute's terms or capable of providing a cure for the untimely request. *Id.* at 327–28. Under these circumstances, the court concluded that dismissal of the nine added claims was the appropriate consequence for Hogan's failure to make a timely and sufficient request. *Id.* at 328.

A dissenting justice reasoned that abatement and loss of exemplary damages are the only remedies available for noncompliance with the DMA. *Id.* at 336, 338 (Jennings, J., dissenting) (citing TEX. CIV. PRAC. & REM. CODE § 73.062(a); *Hardy v. Commc'n Workers of Am. Local 6215 AFL – CIO*, 536 S.W.3d 38, 47 (Tex. App.—Dallas 2017, pet. denied)). And regardless of the DMA's abatement procedure, the dissenting justice concluded, Hogan satisfied the statutory requirements when he filed his original petition, which included statements relating to the same subject matter as the newly added statements. *Id.* at 337. According to the dissent, holding that a court may dismiss a suit for failure to provide adequate notice would undermine the DMA's purposes. *Id.* at 338 (citing TEX. CIV. PRAC. & REM. CODE § 73.052).

## II. The Defamation Mitigation Act

The DMA "provide[s] a method for a person who has been defamed by a publication or broadcast to mitigate any perceived damage or injury." TEX. CIV. PRAC. & REM. CODE § 73.052. Rather than replace the common-law elements of a defamation claim, the statute prescribes a mechanism for plaintiffs to bring attention to defamatory publications to enable defendants, if they so choose, to take corrective action and thereby mitigate injury stemming from that publication. *See Warner Bros. Ent., Inc. v. Jones*, 611 S.W.3d 1, 10 (Tex. 2020) (citing TEX. CIV. PRAC. & REM. CODE § 73.055(a)) ("[The DMA uses] sticks and carrots to induce plaintiffs and defendants to take prompt action to rectify defamatory publications so any ensuing damages are ameliorated."). Alternatively, a defendant may proactively change potentially defamatory statements to mitigate damages and limit liability arising from those statements. *Id.*; TEX. CIV. PRAC. & REM. CODE §§ 73.055(a)(2), .059. Either avenue—a plaintiff's request or a defendant's change—will provide the defendant with the requisite notice for a plaintiff to maintain an action

for defamation. TEX. CIV. PRAC. & REM. CODE § 73.055(a); *see Warner Bros. Ent., Inc.*, 611 S.W.3d at 10.

Zoanni contended in her motion to dismiss before the trial court that Hogan's defamation claims for the nine new statements did not comply with the DMA because Hogan neither made a request for a correction, clarification, or retraction from Zoanni nor relied on a change made by her to those statements. A plaintiff makes a compliant request if that request is "timely" and "sufficient." TEX. CIV. PRAC. & REM. CODE § 73.055(a)(1). A request "is timely if made during the period of limitation for commencement of an action for defamation." *Id.* § 73.055(b). A request is sufficient if it

> (1) is served on the publisher; (2) is made in writing, reasonably identifies the person making the request, and is signed by the individual claiming to have been defamed or by the person's authorized attorney or agent; (3) states with particularity the statement alleged to be false and defamatory and, to the extent known, the time and place of publication; (4) alleges the defamatory meaning of the statement; and (5) specifies the circumstances causing a defamatory meaning of the statement if it arises from something other than the express language of the publication.

*Id.* § 73.055(d). A defendant may challenge whether it received an appropriate request in two ways: (1) within sixty days of service of citation "in a motion to declare the request insufficient or untimely," *id.* § 73.058(c); or (2) within thirty days of filing an original answer by filing a plea in abatement, *id.* § 73.062(a). Unless the plaintiff files a controverting affidavit, the suit "automatically abate[s]" eleven days after the plea is filed "without the order of the court" if that plea "is verified and alleges" the defendant "did not receive the written request required by Section 73.055." *Id.* § 73.062(b). The suit remains abated for sixty days after the plaintiff provides the written request unless the parties agree to a later date. *Id.* § 73.062(c).

In addition to the abatement remedy, the DMA also explicitly limits recoverable damages. First, under specified circumstances, the DMA forecloses an award of exemplary damages. *Id.* §§ 73.055(c), .056(b), .059. Second, with or without a request or change, defendants can introduce evidence in mitigation of damages in accordance with Section 73.003. *Id.* §§ 73.003(a)(3), .061(b). And third, with or without a change or request, actual damages remain subject to the general requirement that plaintiffs mitigate their damages to the extent reasonably possible. *See id.* § 73.003(a)(1).

### III. Analysis

### A

Neither party argues that Hogan made a request with respect to the nine new statements within a year of their publication. Rather, Hogan asserts that either the nine statements relate back to the original four of a similar nature—the three for which he provided a request and the one Zoanni changed on her own accord—or dismissal is not a remedy the statute provides. According to Hogan, outright dismissal would defeat the statute's expressly stated purpose of providing plaintiffs a method to mitigate perceived damage or injury. *See id.* § 73.052. While the DMA encourages a plaintiff to make a prompt request, *see id.* § 73.055(c), it does not shield the defendant from all liability when a plaintiff merely fails to make that request or makes a request that is defective in some respect. Holding otherwise would deprive injured plaintiffs of any remedy at all and, worse, would allow defamatory publications to remain uncorrected in perpetuity. Such a consequence is antithetical to the statute's stated purpose and collaborative scheme.

In response, Zoanni asserts that the DMA's "only if" provision creates a mandatory condition. *See id.* § 73.055(a). If a plaintiff fails to make a timely request—that is, fails to make a

7

request "during the period of limitation for commencement of an action for defamation"—then the suit must be dismissed because a request made after limitations has expired can never be "timely." *Id.* § 73.055(b); *see id.* § 16.002(a) ("A person must bring a suit for malicious prosecution, libel, slander, or breach of promise of marriage not later than one year after the day the cause of action accrues."). Implicit in Zoanni's argument is that a request will always be untimely if made more than a year after publication even if the defamation suit is filed within the limitations period. Furthermore, Zoanni argues that even assuming a timely request could be made more than a year after publication, she was not required to timely object or timely invoke the abatement process because the statutory deadlines for doing so had already expired when the new defamation claims were added. *See id.* §§ 73.058(c), .062(a). Specifically, she contends that the deadline to have a request declared untimely or insufficient expired sixty days after Hogan's service of citation. *See id.* § 73.058(c). Additionally, because a plea in abatement that challenges compliance with Section 73.055 must be filed within thirty days after the defendant files an original answer, Zoanni could no longer file a plea in abatement because she filed her original answer when the suit began years earlier. Assuming without deciding that Hogan's nine new statements do not relate back to his original request, as Zoanni asserts, we address whether the DMA mandates dismissal.

**B**

Whether the DMA requires dismissal of Hogan's defamation claims as to the nine added statements turns on the proper construction of the statute. *See AC Ints., L.P. v. Tex. Comm'n on Envtl. Quality*, 543 S.W.3d 703, 706 (Tex. 2018). Therefore, we apply traditional principles of statutory interpretation to determine whether the Legislature intended dismissal as a remedy for failure to serve statutory notice before expiration of the statute of limitations. *See id.* at 708. The

8

purpose of statutory construction is "to effectuate the Legislature's intent by 'giv[ing] effect to every word, clause, and sentence.'" *Sunstate Equip. Co. v. Hegar*, 601 S.W.3d 685, 689–90 (Tex. 2020) (quoting *First Am. Title Ins. Co. v. Combs*, 58 S.W.3d 627, 631 (Tex. 2008)). Indeed, the statutory text is the "first and foremost" indication of the Legislature's intent. *Greater Hous. P'Ship v. Paxton*, 468 S.W.3d 51, 58 (Tex. 2015). We do not look at statutory provisions in isolation but rather derive the Legislature's intent and the statute's meaning from the statute as a whole. TEX. GOV'T CODE § 311.021(2); *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 572 (Tex. 2016). Moreover, we "presume the Legislature chose statutory language deliberately and purposefully," *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 390 (Tex. 2014), and that it likewise excluded language deliberately and purposefully, *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981). Thus, we are cautious not to interpret silence in a way that undermines a statute's purpose. *AC Ints., L.P.*, 543 S.W.3d at 709 (citing *Hines v. Hash*, 843 S.W.2d 464, 468 (Tex. 1992)).

Under the DMA, a plaintiff "may maintain an action for defamation *only if*: (1) [the plaintiff] has made a timely and sufficient request for a correction, clarification, or retraction from the defendant; or (2) the defendant has made a correction, clarification, or retraction." TEX. CIV. PRAC. & REM. CODE § 73.055(a) (emphasis added). It is undisputed that Zoanni did not make a "change" within the meaning of Section 73.055(a)(2) as to the nine newly discovered statements. *See Warner Bros. Ent., Inc.*, 611 S.W.3d at 13–14 (holding defendant's revisions to a publication were a "change" within the meaning of Section 73.055(a)(2)). Zoanni asserts that the opposite of "maintain" is dismiss, but this understanding contravenes both the commonly understood and contextual meaning of that term.

The Legislature left the term "maintain" undefined. When a term is left undefined in a statute, "we will use the plain and ordinary meaning of the term and interpret it within the context of the statute." *EBS Sols., Inc. v. Hegar*, 601 S.W.3d 744, 758 (Tex. 2020) (citing *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 441 (Tex. 2011)). The dictionary defines maintain to mean "to keep in an existing state" or "to continue or preserve in." *Maintain*, MERRIAM-WEBSTER'S NEW COLLEGIATE DICTIONARY (8th ed. 1977); *see Maintain*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("[T]o continue (something)."). And it is the ongoing suit that cannot continue if notice was not provided. *See* TEX. CIV. PRAC. & REM. CODE § 73.055. That is, a plaintiff's lawsuit can continue if a timely and sufficient request for correction, clarification, or retraction has been provided. But that does not mean that failure to provide a request subjects the suit to automatic dismissal. *See AC Ints., L.P.*, 543 S.W.3d at 709–10 (citing *State v. $435,000*, 842 S.W.2d 642, 644 (Tex. 1992) (per curiam)) (holding that a petition was not subject to automatic dismissal for failure to timely serve); *Hines*, 843 S.W.2d at 469 (holding that filing an action under the DTPA without adequate pre-suit notice results in abatement rather than dismissal). Instead, the statute's terms determine the appropriate consequence for failure to comply with a notice requirement. *See Hines*, 843 S.W.2d at 469 ("The Legislature may prescribe the consequences for failure to comply with statutory requirements . . . .").

When the Legislature intends dismissal as the consequence for noncompliance, it clearly says so in the statute. For example, under the Texas Medical Liability Act, "a claimant shall . . . serve on the [defendant] or the [defendant's] attorney one or more expert reports." TEX. CIV. PRAC. & REM. CODE § 74.351(a). If "an expert report has not been served . . . the court, on the motion of the affected physician or health care provider, *shall . . . dismiss[]* the claim," subject

10

to certain exceptions. *Id.* § 74.351(b)(2), (c) (emphasis added). For suits against certain licensed or registered professionals, the claimant "shall be required to file with the complaint an affidavit of a third-party licensed architect, licensed professional engineer, registered landscape architect, or registered professional land surveyor who" meets certain qualifications. *Id.* § 150.002(a). "A claimant's failure to file the affidavit . . . *shall result in dismissal* of the complaint against the defendant." *Id.* § 150.002(e) (emphasis added). And in asbestos- or silica-related suits, a claimant must serve a report on each defendant with a host of information. *Id.* §§ 90.003–.004. If a defendant timely files a motion to dismiss asserting the plaintiff failed to serve the necessary report, and the court is of the opinion that the motion to dismiss is meritorious, "the court *shall* . . . grant the motion and *dismiss* all of the claimant's asbestos-related claims or silica-related claims." *Id.* § 90.007(a), (c) (emphases added). Here though, the statute says nothing of dismissal. And when a statute is silent on a subject, we presume the Legislature purposefully excluded that language. *Cameron*, 618 S.W.2d at 540.

The DMA's express abatement process for addressing challenges to the required request confirms this presumption. If a defendant elects to challenge the receipt of "a written request for a correction, clarification, or retraction, as required by Section 73.055, [the defendant] may file a plea in abatement." TEX. CIV. PRAC. & REM. CODE § 73.062(a). In other words, compliance is challenged at the defendant's election by a plea in abatement. *See id.* And while Zoanni contends that a plea in abatement would have been meaningless because more than a year had passed since publication of the underlying defamatory statements, that argument is inconsistent with the language of the abatement provision, which contemplates the possibility of notice beyond the limitations period. *See id.* § 73.062(a)–(c).

11

Under the abatement provision's terms, a defendant may file a plea in abatement if it "[did] not receive a written request for a correction, clarification, or retraction, as required by Section 73.055." *Id.* § 73.062(a). Section 73.055 requires that the request be "timely" and "sufficient," while the abatement provision broadly states that a person who does not receive a compliant request may file a plea in abatement. Abatement is thus a vehicle for the defendant to challenge whether (1) the defendant has received a compliant request, (2) the defendant has received a timely, but insufficient request,[1] or (3) the defendant has received a sufficient request outside the limitations period. If the plaintiff responds to the defendant's plea in abatement with proof of a previous request served on the defendant within the limitations period—including a petition—that ticks all of Section 73.055(c)'s "sufficiency" boxes, then the plaintiff may "maintain" or "continue" the suit. *Id.* § 73.062(b). However, if the plaintiff cannot produce evidence of such a request, the plaintiff may not "maintain" the suit, which instead is abated. *Id.* § 73.062(a)–(c). Simply because a request "is timely if made during the period of limitations for commencement of an action for defamation," *id.* § 73.055(b), does not render a request served beyond the limitations period noncompliant. The statute's phrasing of "timely" in terms of what is *sufficient* for timeliness rather than what is *necessary* is significant. For that reason, when a defendant successfully invokes the abatement process with respect to the plaintiff's defamation suit, the

---

[1] Depending on its nature and specificity, a petition may satisfy Section 73.055(d). Section 73.055(d)'s description of a sufficient request includes, among other things, that a request be "made in writing," "served on the publisher," and "signed by the individual claiming to have been defamed or by the person's authorized attorney or agent." TEX. CIV. PRAC. & REM. CODE. § 73.055(d)(1)–(2). Under the rules of civil procedure, a petition—which is made in writing—must be served on all defendants (which would include a publisher in a defamation action), and either the plaintiff or the plaintiff's attorney must sign the petition. TEX. R. CIV. P. 21, 57. Because the abatement process is available after service of a petition, the concurrence's reading of Section 73.062 as applying in the absence of a writing misses the mark. *Post* at ___. Rather, abatement would apply if the petition were insufficient in other ways or was not served on the defendant within the limitations period because, once the defamation petition is served, those would be the only ways the writing would not be "as required by Section 73.055." TEX. CIV. PRAC. & REM. CODE § 73.062(a).

abatement provision provides a substitute process for obtaining the request necessary to continue the suit. To exit abatement, the plaintiff must provide a written request in response to the plea in abatement. *Id.* § 73.062(c). The suit recommences generally sixty days after the plaintiff provides the written request in response to the plea in abatement. *Id.*

In concluding that dismissal was a statutorily allotted consequence, the court of appeals failed to recognize that all roads under the DMA lead to a loss of exemplary damages rather than dismissal.[2] 555 S.W.3d at 330. The statute incentivizes plaintiffs to act to avoid an exemplary-damages cutoff and for defendants to respond quickly to invoke one. "If not later than the 90th day after receiving *knowledge* of the publication, the [plaintiff] does not request a correction, clarification, or retraction, the [plaintiff] may not recover exemplary damages." TEX. CIV. PRAC. & REM. CODE § 73.055(c) (emphasis added). The court of appeals incorrectly interpreted the statute to conclude that a plaintiff's right to exemplary damages would always expire either before limitations or concurrently with it. 555 S.W.3d at 328–29. However, the words the Legislature used when describing the exemplary-damages cutoff are important.

In reaching its conclusion, the court of appeals failed to recognize that the limitations clock and exemplary-damages clock are triggered by two separate events and may not expire simultaneously. Under the DMA, the limitations clock is determined by accrual—that is, when an

---

[2] Take the dissent's hypothetical of a plaintiff who files suit just before limitations expires as an example. *Post* at ___. Assuming the defendant had not already made a sufficient change to eliminate exemplary damages, TEX. CIV. PRAC. & REM. CODE §§ 73.055(a)(2), .057, .059, the statute offers multiple avenues to foreclose such an award, absent proof of actual malice. First, a defendant might prove that the plaintiff failed to make a sufficient request within ninety days of obtaining knowledge of the publication. *Id.* § 73.055(c). Alternatively, a defendant might instead make a sufficient change to the allegedly defamatory publication within thirty days of receipt of a sufficient request. *Id.* §§ 73.057(a)(1), .059. Or within thirty days of receipt of a plaintiff's request, a defendant might ask for evidence of the allegedly defamatory statement's falsity and subsequently make a timely and sufficient change to the publication. *Id.* §§ 73.056, .057(a)(2), .059. Each avenue is its own road that leads to a loss of exemplary damages.

enforceable claim or right comes into existence. *Accrue*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see* TEX. CIV. PRAC. & REM. CODE § 16.002(a) ("A person must bring suit for . . . [defamation] . . . not later than one year after the day the cause of action *accrues*." (emphasis added)). Importantly, we have never held that the discovery rule applies to defamation claims except in the narrow circumstance involving a person's discovery of allegedly libelous information filed with a credit agency. *See Kelley v. Rinkle*, 532 S.W.2d 947, 949 (Tex. 1976). And in fact, we suggested that the discovery rule would rarely extend to other contexts. *Id.* In other words, we have suggested that for defamation suits, accrual generally occurs the date the publication is made. Conversely, the DMA's exemplary-damages bar is trigged by *knowledge*, not the date of publication. TEX. CIV. PRAC. & REM. CODE § 73.055(c). Because we presume that the Legislature knew the state of the law at the time of enactment, *Dugger v. Arredondo*, 408 S.W.3d 825, 835 (Tex. 2013), any interpretation of the DMA must accommodate this textual distinction between knowledge and accrual.

In concluding that a plaintiff's right to exemplary damages necessarily expires with or prior to the limitations period, the court of appeals failed to give effect to Section 73.055(c)'s focus on *knowledge*. While a plaintiff's ability to seek exemplary damages very well may end before the limitations period, it could also extend *beyond* the limitations period depending on when the plaintiff learned of the publication and what the defendant can prove about that matter. Thus, under the terms of the statute, the Legislature contemplated that a plaintiff could provide a sufficient request beyond the limitations period, but it only prescribed a loss of exemplary damages, depending on what a defendant may prove, not dismissal.

14

Knowledge can be difficult to prove, though. *See Rogers v. Ricane Enters., Inc.*, 930 S.W.2d 157, 174 (Tex. App.—Amarillo 1996, writ denied). And the DMA affords defendants some assistance in the matter. For example, Section 73.058(c) allows a defendant to file a motion to declare a request either insufficient or untimely within sixty days of service of citation. TEX. CIV. PRAC. & REM. CODE § 73.058(c). A declaration that a plaintiff provided a noncompliant request serves the dual purposes of establishing a date the plaintiff had knowledge of the publication and informing the plaintiff that it has yet to provide a request to possibly preserve exemplary damages.

Although a defendant's proactive change to an allegedly defamatory publication can bar exemplary damages absent actual malice, *id.* § 73.059, receipt of a request provides defendants additional avenues to bar exemplary damages. Within thirty days of a request, a defendant can either sufficiently change the publication or force the plaintiff to produce evidence of falsity. *Id.* §§ 73.056, .057(a)(1), .059. If a defendant chooses to request evidence of falsity, the defendant may then respond to the evidence by making a change to bar exemplary damages. *Id.* §§ 73.057(a)(2), .059. If a plaintiff fails to provide evidence within thirty days, the plaintiff loses its right to exemplary damages absent good cause or proof of actual malice. *Id.* § 73.056(b). This intentional system of carrots and sticks encourages plaintiffs and defendants to collaborate to mitigate reputational harm by putting the availability of exemplary damages at stake.[3] *See Warner Bros. Ent., Inc.*, 611 S.W.3d at 10.

---

[3] Collaboration is essential to mitigating defamatory losses. Defendants are in control of their own publications, so they must be incentivized to act, but they cannot do so until they are adequately apprised of the publication at issue and its alleged defamatory nature as section 73.055 requires.

Additionally, the court of appeals' rationale that the exemplary-damages and limitations clocks simultaneously expire fails to acknowledge other relevant provisions. The court reasoned that it would be nonsensical for a plaintiff only to lose exemplary damages even when the plaintiff possessed knowledge of that publication for more than ninety days or beyond the limitations period. 555 S.W.3d at 329. Although exemplary damages are the DMA's primary carrot and stick, defendants can also put on evidence of all material facts and circumstances that contribute to the plaintiff's claim for actual damages and any public apology, correction, or retraction of the libelous matter made and published by the defendant. *Id.* §§ 73.003(a)(1), (3), .061(b). As material circumstances bearing on the extent and source of the plaintiff's actual damages, a defendant can rely on evidence of a plaintiff's failure to provide a timely or sufficient request, failure to respond to a court's declaration that a provided request was noncompliant, or delay in providing a request. *See id.* § 73.003(a)(1).

In concluding that the DMA affords a defendant the right to dismissal for a plaintiff's failure to provide a request within the limitations period, the court of appeals neutered the statute's intentional scheme, which facilitates the exchange of information with the goal of obtaining a change to the underlying defamatory statement—the true source of the plaintiff's damages. *Id.* § 73.052; *see also id.* § 73.051 (calling for a liberal construction to effectuate the DMA's purpose). Implying a right to dismissal for failure to provide notice before limitations has expired is not apparent from the statute's text and serves only to undermine the statute's expressly stated purpose of mitigating damages by providing an opportunity for the correction, clarification, or retraction of a defamatory statement. *Id.* § 73.052; *see Mauzy v. Legislative Redistricting Bd.*, 471 S.W.2d 570, 573 (Tex. 1971).

# C

Today the Court does not reach a consensus on the main issue presented—whether the DMA requires dismissal of certain claims in a timely filed lawsuit for which the defendant has not received a sufficient request before limitations has expired. But that is only because the concurrence and dissent fail to give effect to the language the Legislature actually enacted. Contrary to the dissent's construction of the statute as precluding continuation of a suit when a request is untimely, Section 73.058(c) explicitly states a defendant must timely object to a request that is itself untimely. TEX. CIV. PRAC. & REM. CODE § 73.058(c). In doing so, the DMA expressly contemplates that absent such objection, a suit can indeed be "maintained" under the statute even though the request comes after limitations has expired. More significantly, even if a timely objection is made, Section 73.058(c) provides a remedy that—notably—is *not* dismissal. *Id.*

Under Section 73.058(c), if a defendant elects to challenge the request, it may file a "motion to declare the request insufficient or untimely." *Id.* If a court agrees, then a defendant will receive a "declar[ation]" to that effect. *Id.* The DMA, however, does not state that the defendant will obtain dismissal. *Compare id.*, *with id.* § 74.351(b)(2) (providing the right to "dismiss[]" a health care liability claim against a physician or health care provider for a plaintiff's failure to provide an expert report), *and id.* § 90.007(a), (c) (defendant's right to "file a motion to dismiss" asbestos- or silica-related claims for failure to receive certain reports). As the old maxim goes, the Legislature does not hide elephants in mouseholes, *see Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 468 (2001), and it certainly does not provide an express remedy when it means to imply another significantly more severe one. If, as the dissent says, limitations is the point of no return, the

17

Legislature's requirement of a timely objection to timeliness would be unnecessary.[4] The dissent does not explain how Section 73.058(c)'s requirement of a timely objection to timeliness remains viable under its view of the statute as mandating dismissal once limitations has expired.

Similarly, the concurrence engrafts a dismissal remedy by stating that an action can be maintained *only if* a request is made within the limitations period, *post* at ___, and that a defendant is entitled to dismissal if it timely objects to receipt of a timely request, *post* at ___. The concurrence confuses what is sufficient with what is necessary. Section 73.055(b) states that a request "is timely if made during the period of limitation for commencement of an action for defamation." TEX. CIV. PRAC. & REM. CODE § 73.055(b). That is, for timeliness purposes under the DMA, it is sufficient that a plaintiff provides a compliant request within the limitations period to "maintain" the suit. But because a written request that is either not served within the limitations period or insufficient in some other respect triggers the DMA's abatement provision after suit is filed, a written request provided in response to a plea in abatement is also statutorily compliant such that the plaintiff may "maintain" the suit.[5] In construing abatement as nugatory once limitations has expired, the concurrence makes necessary what the statute says is sufficient.

Moreover, the concurrence interlineates a remedy that is neither stated nor contemplated by Section 73.058(c)'s objection provision—dismissal—despite the statute's express statement

---

[4] The dissent additionally renders as surplusage Section 73.062(a)'s permissive challenge to whether a written request was received. *See PlainsCapital Bank v. Martin*, 459 S.W.3d 550, 556 (Tex. 2015). The abatement provision provides a means for a defendant to receive a written request through the abatement process if the defendant files a timely plea in abatement. TEX. CIV. PRAC. & REM. CODE § 73.062(a). However, under the dissent's construction of the statute, a defendant would never rely on the abatement provision, or Section 73.058(c)'s objection requirement, when the defendant could simply move to dismiss.

[5] If the abatement process is not timely invoked, the defendant cannot complain that it has not received a request as required by Section 73.055. *See* TEX. CIV. PRAC. & REM. CODE § 73.062(a) (defendant may file plea in abatement within thirty days of filing its original answer).

18

that a timely objection to a noncompliant request only entitles a defendant to a declaration. *Id.* § 73.058(c). This approach fails to acknowledge Section 73.058(c)'s function. A "declar[ation]" under this section forces a plaintiff to act, if it can, to preserve the possibility of exemplary damages. *Id.* § 73.055(c) (loss of exemplary damages for failure to make a request within ninety days of obtaining knowledge of the defamatory statement). It also forces the plaintiff to take additional measures that can be considered in determining whether and to what extent a plaintiff's damages emanate from the defamatory publication or from the plaintiff's failure to promptly take mitigatory measures. Specifically, in aiding the assessment of actual damages arising from a defamatory publication, a defendant can provide all material facts and circumstances that contribute to a plaintiff's claim for actual damages. *Id.* §§ 73.003(a)(1), .061(b). Thus, a Section 73.058 declaration is not only a means of informing the plaintiff that the defendant lacks what the statute contemplates, but it also can operate to bar the plaintiff from obtaining exemplary damages and as evidence of the plaintiff's contribution to its own damages. Thus, by recognizing a remedy Section 73.058(c) does not authorize, the concurrence overlooks the function Section 73.058(c) actually serves.

In drawing inferences about the Legislature's supposed intent, both the concurrence and the dissent fail to construe the phrase "maintain . . . only if" within the statute's context. It is not our role to speculate on the Legislature's purpose, but instead to give meaning to every word in a statute, harmonizing each provision. *McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003) ("[W]e will not give an undefined statutory term a meaning that is out of harmony or inconsistent with other provisions in the statute."); *State v. Standard Oil Co.*, 107 S.W.2d 550, 559 (Tex. 1937) ("We are to interpret the language used in a manner to make all relevant laws [] harmonious . . . .").

When interpreting terms in a statute, that context necessarily includes the Legislature's codified purpose. ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 68 ("[W]ords are given meaning by their context, and context includes the purpose of the text."); *see Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 354–55 (Tex. 2017) (Willett, J., dissenting) ("When legislators articulate an explicit purpose in the very words of the statute, the Court need not—and should not—speculate."). By inferring an unstated dismissal right under the DMA, the concurrence and the dissent ignore the Legislature's codified purpose: "to provide a method for a person who has been defamed by a publication or broadcast to mitigate any perceived damage or injury." TEX. CIV. PRAC. & REM. CODE § 73.052. An unwary victim is left without an opportunity to "mitigate any perceived damage or injury" or recourse to compel a tortfeasor to correct the public record. *Id.*

**D**

Zoanni lastly contends the statute's abatement process was not available to her with respect to the nine statements added in the seventh amended petition because the statutory deadline for invoking that process had already passed when the amended petition was filed. The defendant's right to file a plea in abatement extends to "the 30th day after the date the [defendant] files *an* original answer in the court in which the suit is pending." *Id.* § 73.062(a) (emphasis added). Zoanni argues that "original answer" refers only to the first answer in the case and that her right to seek an abatement under the statute accordingly ended thirty days after that first answer was filed. Ironically, Zoanni titled her response to the seventh amended petition, which challenged the nine

20

additional defamation claims, as an original answer. But titles aside, she maintains that only the first original answer in the case triggers the DMA's deadline for invoking the abatement process.

Zoanni's position ignores our procedural rules and the DMA's language. Under the rules of procedure, a plaintiff may amend an original petition throughout the pretrial process. *See* TEX. R. CIV. P. 63. Each amendment that raises a new claim presents an opportunity, and sometimes an obligation, for the defendant to answer. *See id.* 62. Each initial answer to a newly alleged claim represents "an original answer" to that claim. The statute makes this distinction clear by not limiting the plea-in-abatement window to thirty days following a defendant filing "the" original answer but instead to thirty days following the filing of "an" original answer. *See* TEX. CIV. PRAC. & REM. CODE § 73.062(a).

Second and similarly, the abatement right is provided to "a person against whom a suit is pending." *Id.* A suit is not pending only when it originates or is filed; a lawsuit is pending throughout its duration until it is resolved. *Pending*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("Remaining undecided; awaiting decision."). Zoanni's position suggests that it is the filing of a lawsuit that triggers the right to abatement, but it is instead the failure of a plaintiff to provide the "written request for a correction, clarification, or retraction as required by Section 73.055" for alleged defamatory statements that triggers the right to abatement. TEX. CIV. PRAC. & REM. CODE § 73.062(a); *see also id.* § 73.055(d)(3) (enumerating that a sufficient request must state with particularity the alleged defamatory statement). As a plaintiff amends his petition to include newly alleged defamatory statements, each of which is a separate claim for defamation, *see Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 587 (Tex. App.—Austin 2007, pet. denied); *Akin v. Santa Clara Land Co.*, 34 S.W.3d 334, 340–41 (Tex. App.—San Antonio

2000, pet. denied); *Marshall Field Stores, Inc. v. Gardiner*, 859 S.W.2d 391, 394–96 (Tex. App.—Houston [1st Dist.] 1993, writ dism'd w.o.j.); *Fisher v. Beach*, 671 S.W.2d 63, 67 (Tex. App.—Dallas 1984, no writ), those newly added claims can trigger the defendant's right to abatement if they are not in the subject of a sufficient request, the plaintiff has no proof they were in the subject of a prior sufficient request, and the defendant has made no change to the statements.[6]

A majority of the Court agrees that Zoanni elected not to seek an abatement, which was available to her when Hogan filed his seventh amended petition. *Post* at ___ (Boyd, J., concurring). Rather, she sought dismissal, claiming Hogan had not provided a timely or sufficient request for the nine newly added claims. The right to seek an abatement is permissive, and a defendant may waive the right if not pursued. Although Zoanni had the right to seek abatement after Hogan filed his seventh amended petition adding the nine new claims, she elected not to pursue that remedy. Zoanni also rejected the trial court's subsequent offer to abate the suit for her to receive the statutory request. She accordingly has waived that remedy along with the opportunity to receive the statutory request.

## IV. Conclusion

The plain language and purpose of the DMA afford a defendant a time-limited right to a plea in abatement if a timely and sufficient request is not provided by the plaintiff. If a plaintiff fails to provide the necessary request and a defendant timely files a plea in abatement, the suit must abate until the plaintiff responds with a written request. TEX. CIV. PRAC. & REM. CODE § 73.062(c). The plain language of the statute does not support a right to dismissal for failing to

---

[6] Because a majority of the Court holds that dismissal is not required even if Hogan's newly added statements do not relate back to his original request, we need not consider whether they do.

provide a sufficient request before the statute of limitations expires. Because Zoanni sought to have the newly added claims dismissed, rather than abated, to remedy the plaintiff's alleged failure to provide a sufficient request, she waived any complaints about defective notice. Accordingly, we reverse the court of appeals' judgment and remand the case to that court for consideration of Zoanni's remaining issues.[7]

 

_____
John P. Devine
Justice

**OPINION DELIVERED:** June 4, 2021

---

[7] The court of appeals has yet to address Zoanni's assertions that (1) "the trial court erroneously failed to submit a mitigation instruction on damages, the damages award is not supported by sufficient evidence, and the award is too large and impermissibly includes punitive damages"; (2) "part of the judgment improperly penalizes Zoanni for her opinions"; (3) "there is not legally sufficient evidence that Zoanni published any of the complained-of police report statements"; and (4) "the trial court erroneously excluded testimony based upon the clergy privilege." 555 S.W.3d at 325.