# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-20311
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
January 12, 2017

Lyle W. Cayce
Clerk

CHARLOTTE TUBBS,

 Plaintiff - Appellant

v.

GERARD NICOL,

 Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:15-CV-2

Before JONES, WIENER, and CLEMENT, Circuit Judges.

PER CURIAM:*

 Charlotte Tubbs, a United Airlines ("United") flight attendant, had an in-air altercation with passenger Gerard Nicol. Nicol sent a letter of complaint to United CEO Jeff Smisek accusing Tubbs of criminal activity. No charges were filed. Tubbs sued Nicol for defamation, intentional infliction of emotional distress ("IIED"), and tortious interference with a prospective employment

---

 * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

relationship ("tortious interference"). The district court granted Nicol's motion for summary judgment on all three claims. Tubbs appeals. We AFFIRM.

I

Nicol was a passenger on a United flight. At one point during the flight, a flight attendant other than Tubbs exited the first class cabin, reached into the pouch in front of an empty seat in Nicol's row in economy class, and retrieved a pair of headphones for a passenger in first class. This evidently upset Nicol, who pushed the flight attendant button at least twice and requested the name of the first class flight attendant who had removed the headphones. At some later point, Tubbs sat in the empty seat next to Nicol and discussed the matter with him. Nicol alleges that, during that conversation, Tubbs put her hand on his arm; Tubbs claims she never touched Nicol.

Many facts surrounding what happened once the plane landed are in dispute. Both parties agree, however, that after deplaning, Nicol approached at least two United customer service agents in the airport to register his displeasure. Nicol requested to and did speak with police officers at the airport. There were no charges filed against Tubbs.

Approximately one month later, Nicol sent an email to Smisek attaching a five-page letter of complaint. In the email, Nicol stated that he had "forwarded" the letter to the Transportation Safety Administration, Federal Bureau of Investigation, and Houston Police Department. Nicol later admitted that he had not forwarded the letter to any such authorities. In the letter, Nicol complained of "alleged criminal activities," claiming that Tubbs (unnamed in the letter) had "put her hand on [his] arm." Nicol concluded the letter by requesting that, among other things, "[a]ll the involved staff [be] counselled so that this does not occur again."

No. 16-20311

Tubbs sued Nicol in state court, seeking damages under Texas state law for defamation, IIED, and tortious interference. The case was removed to federal district court. Nicol moved for summary judgment on each of Tubbs's claims. The district court granted summary judgment on all three. Tubbs timely appealed.

## II

We review "the district court's ruling on summary judgment de novo, applying the same standard as the district court in the first instance." *Davis v. Fort Bend Cty.*, 765 F.3d 480, 484 (5th Cir. 2014). Summary judgment is appropriate only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III

Tubbs appeals the district court's grant of summary judgment on each of her three claims. We examine them successively.

### A. Defamation

To establish a defamation claim against a private, non-media defendant, a plaintiff must show that the defendant "(1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with . . . negligence, if the plaintiff was a private individual, regarding the truth of the statement." *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). In addition, to make out a successful defamation claim in Texas, a plaintiff must comply with the requirements of the Defamation Mitigation Act ("DMA"). The stated purpose of the DMA is "to provide a method for a person who has been defamed . . . to mitigate any perceived damage or injury." Tex. Civ. Prac. & Rem. Code § 73.052. The DMA covers "all publications," *id.* at § 73.054(b), and provides that "[a] person may maintain an action for defamation only if . . . the person has made a timely and sufficient request for correction, clarification, or

retraction from the defendant." *Id.* at § 73.055(a). If a plaintiff does not make such a request before the statute of limitations expires, she may not state a claim for defamation. *See id.* at § 73.055(b).

Here, Tubbs concedes that she never requested that Nicol correct, clarify, or retract his letter to Smisek. She argues that any such request would have been futile, because Nicol had already testified that he would not have altered the letter in any way. We note first that nothing in the language of the DMA indicates that it intends to exclude cases in which a request for correction, clarification, or retraction would be futile. Tubbs points to no case law holding as much. Even assuming that such an exclusion does exist, however, Tubbs's argument fails. Tubbs points to only one piece of record evidence to support her argument: during his deposition, Nicol was asked, "is there anything in the letter that you want to change or take back at this point," and he responded "[n]o." This singular statement does not prove that Nicol would never have responded affirmatively to any request to modify or retract. Thus, because Tubbs failed to follow the requirements of the DMA, her defamation claim fails as a matter of law.

## B. IIED

Under Texas law, IIED is "a 'gap-filler' tort [that was] never intended to supplant or duplicate existing statutory or common-law remedies." *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005); *see also Standard Fruit & Vegetable Co., Inc. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998). If a plaintiff's complaints "are covered by other statutory remedies, she cannot assert them as [IIED] claims just because those avenues may now be barred." *Creditwatch*, 157 S.W.3d at 816 (citing *Hoffmann–La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004)). In other words, if "the gravamen of a plaintiff's complaint is the type of wrong that the statutory remedy was meant

to cover, a plaintiff cannot maintain an [IIED] claim regardless of whether he or she succeeds on, or even makes, a statutory claim." *Hoffmann-La Roche*, 144 S.W.3d at 448; *see also Draker v. Schreiber*, 271 S.W.3d 318, 322–23 (Tex. App.——San Antonio 2008, no pet.) (applying *Hoffmann-La Roche* where the gravamen of the plaintiff's complaint was defamation).

Here, the gravamen of Tubbs's complaint is clearly defamation. It is undisputed that Tubbs's IIED claim rests upon the same underlying facts as her claim for defamation—that is, Nicol's statements accusing her of criminal conduct. Tubbs does not allege facts that are independent of her defamation claim and that could support a claim for IIED. Our dismissal of Tubbs's defamation claim does not affect the unavailability of her IIED claim. Accordingly, Tubbs's IIED claim fails as a matter of law.

C. Tortious Interference

The district court analyzed Tubbs's tortious interference claim under the elements set forth in *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013), a case concerning whether a tenant's refusal to leave the premises "interfered with a *reasonably probable contract*" that the owner could have entered into with another tenant. *Id.* at 924 (emphasis added).

Texas law clearly distinguishes between tortious interference with an *existing* contractual or business relationship and tortious interference with a *prospective* contractual or business relationship. *Compare ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997) (enumerating the elements of a claim for tortious interference with an existing contractual relationship), *with Coinmach*, 417 S.W.3d at 923 (enumerating the elements of a claim for tortious interference with a prospective contractual relationship). *See also* RESTATEMENT (SECOND) OF TORTS § 766A, cmt. a (1979) (covering the tortious

interference with plaintiff's performance of his own contract); RESTATEMENT (SECOND) OF TORTS §766B, cmt. a (1979) (covering the tortious interference with prospective contractual relations, not yet reduced to contract). Under *Coinmach*, a claim for tortious interference with a prospective business relationship requires a plaintiff to show, inter alia, that "there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party . . . ." *Coinmach*, 417 S.W.3d at 923. Here, Tubbs argues that Defendant's actions interfered with the execution of her existing employment relationship with United Airlines, and makes no mention of a prospective relationship of any kind.

Had she succeeded on the first element, Tubbs's claim would have nonetheless failed on the element of intent. *See ACS Investors*, 943 S.W.2d at 430 (holding that a plaintiff must show that the alleged act of interference with an existing contract was "willful and intentional"). Tubbs points to no evidence in the record establishing that Nicol acted with a conscious desire to interfere with her employment when he sent the letter to Smisek. In his letter, Nicol never asked for Tubbs to be fired or for the number of flights she worked to be reduced. Nicol requested only that "[a]ll the involved staff [be] counselled so that this does not occur again." This request would be insufficient to establish a conscious desire to destroy or diminish Tubbs's employment relationship with United.

Because Tubbs is unable to establish an essential element of her tortious interference claim, that claim fails as a matter of law.

## IV

For these reasons, we AFFIRM the ruling of the district court.