# IN THE SUPREME COURT OF TEXAS

═══════════

No. 18-0944

═══════════

LEMUEL DAVID HOGAN, PETITIONER,

v.

STEPHANIE MONTAGNE ZOANNI, RESPONDENT

═══════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIRST DISTRICT OF TEXAS

═══════════

CHIEF JUSTICE HECHT, joined by JUSTICE BLACKLOCK and JUSTICE HUDDLE, dissenting.

The Texas Defamation Mitigation Act (the Act)[1] states: "A person may *maintain* an action for defamation *only if*: (1) the person has made a timely and sufficient request for a correction, clarification, or retraction from the defendant; or (2) the defendant has made a correction, clarification, or retraction."[2] The plurality dutifully acknowledges that the purpose of statutory construction is to give effect to every word,[3] but then it proceeds to give the words *maintain only if* no effect whatsoever. A plaintiff who has not made a timely request may nevertheless pursue his defamation action to judgment with at worst a short abatement along the way. A plaintiff who has

---

[1] TEX. CIV. PRAC. & REM. CODE §§ 73.051–73.062.

[2] *Id.* § 73.055(a) (emphases added).

[3] *See ante* at 8–9 (quoting *Sunstate Equip. Co. v. Hegar*, 601 S.W.3d 685, 689–690 (Tex. 2020)).

never before made a request may do so during the abatement period, and that request will be timely, even though the deadline has passed. Sensing perhaps that its interpretation of the Act may not be entirely credible, the plurality bristles that it has no choice. "Holding otherwise", the plurality insists, "would deprive injured plaintiffs of any remedy".[4] But that is true only for plaintiffs who fail to mitigate their damages in compliance with the Act. The Act affords every compliant plaintiff full recourse for all injuries suffered and may actually benefit the compliant plaintiff by encouraging the defendant to redress his injury. The plurality simply disagrees that noncompliance with the Act should have consequences, and so it must argue that by giving effect to every word of the Act, *maintain only if* compliance actually means *maintain regardless of compliance*. The plurality keeps its promise of giving effect to every word of the Act by redefining *only if* to mean *whether or not*. The plurality's position is Humpty Dumpty's: "When *I* use a word, . . . it means just what I choose it to mean—neither more nor less."[5] "'That's a great deal to make . . . word[s] mean.'"[6]

The Court is evenly divided on the meaning of *maintain only if*. The concurrence agrees with my analysis that noncompliance requires dismissal.[7] The plurality opinion, joined by four Justices, disagrees—but not as a textual matter. The plurality gives itself away by explaining that

---

[4] *Ante* at 7.

[5] Lewis Carroll, *Through the Looking-Glass*, ch. VI, at 163 (W.W. Norton & Co. 1971), *quoted in Robinson v. Cent. Tex. Mental Health & Mental Retardation Ctr.*, 780 S.W.2d 169, 176 (Tex. 1989) (Hecht, J., dissenting from the Court's interpreting "use" in the Texas Tort Claims Act to mean "non-use").

[6] *Id.* at 164 (Alice's response), *quoted in Robinson*, 780 S.W.2d at 176 n.4 (Hecht, J., dissenting).

[7] *Ante* at 12 (Boyd, J., concurring) ("I agree with the dissenting Justices that, under common, ordinary usage, a legal action that cannot be 'maintained' must be dismissed.").

reading the Act as written "would undermine [its] purposes".[8] Thus, while the plurality's voice is that of a textualist, its hands are those of a purposivist.[9] The textualist position is that what best achieves the Legislature's purpose—here, incentivizing the mitigation of defamation damages—is faithfully reading the Legislature's words to mean what they say. The purposivist "break[s] free from the bonds of statutory text to ensure that a preferred public policy [is] achieved."[10] Justice Elana Kagan has famously said in tribute to Justice Antonin Scalia's successful advancement of the doctrine of textualism, "we're all textualists now".[11] More accurately, we all *say* we're textualists now.

What would undermine the Legislature's purpose would be to refuse to interpret the Act as written, as the plurality proposes to do. And while that would be a serious matter, it would be of limited consequence. After all, the Legislature can fix this Court's statutory misinterpretations if it chooses. The greater damage would be the stark departure from statutory-construction principles on which the Court has stood firm. To be sure, statutory interpretation can be hard, as our cases reflect. Language is often unclear, and reasonable minds can differ on its best meaning. But *maintain only if* is about as clear as it gets. Refusing to give that phrase its plain meaning because judges doubt whether it is good policy would threaten to reduce principles to rhetoric, or chatter. At the very least, those principles do not emerge today unscathed, and for that reason, I must

---

[8] *Ante* at 5.

[9] With apologies to Father Isaac. *See Genesis* 27:22 ("So Jacob went near to Isaac his father, who felt him and said, 'The voice is Jacob's voice, but the hands are the hands of Esau.'").

[10] Diarmuid F. O'Scannlain, *We Are All Textualists Now: The Legacy of Antonin Scalia*, 91 ST. JOHN'S L. REV. 303, 305 (2017) (Remarks Given at St. John's University School of Law, Queens, N.Y., Sept. 29, 2017).

[11] Harvard Law School, *The 2015 Scalia Lecture: A Dialogue with Justice Elana Kagan on the Reading of Statutes*, YOUTUBE (Nov. 17, 2015) (statement at 8:28).

respectfully dissent.

## I

As a general rule, "[t]he long-standing law of this state requires a claimant to mitigate damages if it can do so with 'trifling expense or with reasonable exertions'."[12] Generally, "[a] plaintiff's post-occurrence failure to mitigate his damages operates as a reduction of his damages award".[13] "Damages awarded for defamatory statements may be mitigated by factors such as public apology, correction, or retraction."[14] But none of those things are within the defamation plaintiff's control. Only the defendant can change his statements. The plaintiff may have little ability to reduce their effect and little incentive to do anything that might blunt his efforts to punish the defendant with litigation and a damages award. The plaintiff could ask the defendant to change his statements, but the defendant may worry that retreating from his statements would signal a lack of confidence in their accuracy. It suffices to say that the common law has not been as effective in encouraging the mitigation of damages in defamation cases as it has been in other cases.

Enter the Act. It was passed in 2013[15] "to provide a method for a person who has been defamed by a publication or broadcast to mitigate any perceived damage or injury."[16] But the method provided is neither optional nor one-sided. Left to their own under the common law,

---

[12] *Warner Bros. Ent., Inc. v. Jones*, 611 S.W.3d 1, 18 (Tex. 2020) (Hecht, C.J., dissenting) (quoting *Walker v. Salt Flat Water Co.*, 96 S.W.2d 231, 232 (Tex. 1936)); *see also id.* n.3 ("[E]ven in tort cases, plaintiffs have an obligation to mitigate damages before trial, and defendants have the ability to reduce their liability by paying the claimed damages before trial." (quoting *JCB, Inc. v. Horsburgh & Scott Co.*, 597 S.W.3d 481, 487 (Tex. 2019))).

[13] *Nabors Well Servs., Ltd. v. Romero*, 456 S.W.3d 553, 564 (Tex. 2015).

[14] *Cain v. Hearst Corp.*, 878 S.W.2d 577, 582 (Tex. 1994); *see Diamond Shamrock Refin. & Mktg. Co. v. Mendez*, 844 S.W.2d 198, 210 (Tex. 1992).

[15] Act of May 22, 2013, 83d Leg., R.S., ch. 950, § 2, 2013 Tex. Gen. Laws 2344.

[16] TEX. CIV. PRAC. & REM. CODE § 73.052.

defamation parties have not been successful in achieving mitigation. Optional is not an option. And mitigation takes two, with responsibility on both the plaintiff and the defendant. The Act requires compliance to "maintain an action for defamation"[17] and penalizes both parties for noncompliance.

The Act is modeled on the Uniform Correction or Clarification of Defamation Act,[18] which the Uniform Law Commission adopted in 1993.[19] The Uniform Act's prefatory note explains that because "harm to reputation can often be cured by other than money damages", the law should "provid[e] strong incentives . . . to correct or clarify an alleged defamation as an alternative to costly litigation."[20] State retraction statutes had been "largely ineffective", according to the Commission, "because they most often appl[ied] to a narrow range of cases and they [did] not create sufficient incentives on both parties, the plaintiff and the defendant, to come to an agreement regarding retraction."[21] The Uniform Act "seeks to remedy these flaws in current law by providing strong incentives for individuals promptly to correct or clarify an alleged defamation as an alternative to costly litigation."[22]

The Texas Act applies broadly to any "claim for relief, however characterized, from damages arising out of harm to personal reputation caused by the false content of a publication"

---

[17] *Id.* § 73.055(a).

[18] *See* S. Comm. on State Affairs, Bill Analysis at 1, Tex. H.B. 1759, 83d Leg., R.S. ("In 1993, the Uniform Law Commission adopted the Uniform Correction or Clarification of Defamation Act which this bill [is] patterned after.").

[19] UNIF. CORRECTION OR CLARIFICATION OF DEFAMATION ACT (NAT'L CONFERENCE OF COMM'RS ON UNIF. STATE LAWS 1993) [hereinafter UNIF. ACT].

[20] UNIF. ACT prefatory note.

[21] *Id.*

[22] *Id.*

and to all "forms of transmitting information."[23] As noted at the outset, the Act provides that "[a] person may *maintain* an action for defamation *only if*: (1) the person has made a timely and sufficient request for a correction, clarification, or retraction from the defendant"—which, for simplicity, I will refer to as a *Request*—or "(2) the defendant has made a correction, clarification, or retraction"—which I will call a *Change*.[24] A Request "is timely if made during the period of limitation for commencement of an action for defamation",[25] which is one year.[26] A Request is sufficient if it:

(1)     is served on the publisher;

(2)     is made in writing, reasonably identifies the person making the request, and is signed by the individual claiming to have been defamed or by the person's authorized attorney or agent;

(3)     states with particularity the statement alleged to be false and defamatory and, to the extent known, the time and place of publication;

(4)     alleges the defamatory meaning of the statement; and

(5)     specifies the circumstances causing a defamatory meaning of the statement if it arises from something other than the express language of the publication.[27]

These requirements are strict and detailed, but compliance is not difficult. In the context of this case, for example, though using other names and details, it might take this simple form:

To Jane Doe: I am John Doe. I live at 1 Main Street, Anytown, Texas. On June 16, 2020, you told a group at the First Baptist Church that I'm a pedophile. That is

---

[23] TEX. CIV. PRAC. & REM. CODE § 73.054.

[24] *Id.* § 73.055(a) (emphases added).

[25] *Id.* § 73.055(b).

[26] *See id.* § 16.002(a) ("A person must bring suit for malicious prosecution, libel, slander, or breach of promise of marriage not later than one year after the day the cause of action accrues.").

[27] *Id.* § 73.055(d).

false. Pedophilia is immoral and criminal. Please take it back.

After a Request is received, the defendant has the option to ask the plaintiff "to provide reasonably available information regarding the falsity of the allegedly defamatory statement not later than the 30th day after the date the person receives the request."[28] To ensure that a Change actually mitigates the harm to a plaintiff, and that the plaintiff can ascertain that a subsequent publication was intended to be a Change, the Act imposes equally stringent requirements for a Change to be sufficient:

> A [Change] is sufficient if it is published in the same manner and medium as the original publication or, if that is not possible, with a prominence and in a manner and medium reasonably likely to reach substantially the same audience as the publication complained of and:
>
> (1)     is publication of an acknowledgment that the statement specified as false and defamatory is erroneous;
>
> (2)     is an allegation that the defamatory meaning arises from other than the express language of the publication and the publisher disclaims an intent to communicate that meaning or to assert its truth;
>
> (3)     is a statement attributed to another person whom the publisher identifies and the publisher disclaims an intent to assert the truth of the statement; or
>
> (4)     is publication of the requestor's statement of the facts, as set forth in a [Request], or a fair summary of the statement, exclusive of any portion that is defamatory of another, obscene, or otherwise improper for publication.[29]

As with a Request, the requirements for a sufficient Change are strict and detailed but also not hard to meet.

A defendant must raise a challenge to the timeliness or sufficiency of a Request by motion[30]

---

[28] *Id.* § 73.056(a).

[29] *Id.* § 73.057(b).

[30] *Id.* § 73.058(c).

7

and must notify a plaintiff of his intention to rely on a Change.[31] A plaintiff must notify a defendant of any challenge to the timeliness or sufficiency of a Change and must assert the challenge in a motion.[32] The Act specifies deadlines for these challenges.[33] The sufficiency and timeliness of a Request are generally questions of law for the trial court to determine before trial.[34]

The Act precludes a plaintiff's recovery of exemplary damages in three instances: if a Request is not made within 90 days of receiving knowledge of the publication;[35] if, after making a Request, a plaintiff does not provide evidence of the publication's falsity within 30 days after being asked by the defendant;[36] and if a defendant makes a sufficient Change within 30 days of a Request.[37] In the latter two instances, the plaintiff's recovery of exemplary damages is not affected if the publication was made with actual malice.[38]

Finally, a defendant in a pending suit who has not received a Request in compliance with the Act may, within 30 days of filing "an original answer", seek to abate the suit.[39] The plaintiff may then serve a Request on the defendant, and the abatement continues for 60 days or to an agreed

---

[31] *Id.* § 73.058(a).

[32] *Id*. § 73.058(b).

[33] *See id.* § 73.058 (b)–(c).

[34] *Id.* § 73.058(d).

[35] *Id.* § 73.055(c).

[36] *Id.* § 73.056.

[37] *Id.* § 73.059.

[38] *See id.* §§ 73.056(b), 73.059.

[39] *Id.* § 73.062(a).

date.[40]

## II

A divided court of appeals held that a plaintiff who does not make a Request before the limitations period expires cannot maintain the action; therefore, the defendant is entitled to dismissal.[41] I agree. The plurality disagrees.

The plurality reasons that *maintain* means *continue*, so if a plaintiff has not made a timely Request, the action cannot continue, and the Act must "determine the appropriate consequence".[42] But the Act has already made that determination: the action cannot be maintained. Not so, the plurality insists, or the Legislature would have used the word *dismissal* as it has in other statutes addressing the consequences of a plaintiff's noncompliance, citing three examples.[43] In response, the concurring opinion cites more than two dozen statutes that "consistently use the phrase 'maintain an action' to address the plaintiff's ability to file a lawsuit or to continue one that has

---

[40] *Id.* § 73.062(c).

[41] 555 S.W.3d 321, 326 (Tex. App.—Houston [1st Dist.] 2018) (2–1). A panel of the U.S. Court of Appeals has reached the same result. *See Tubbs v. Nicol*, 675 F. App'x 437 (5th Cir. 2017) (per curiam) (affirming summary judgment for the defendant on the plaintiff's defamation claim where the plaintiff never made a Request and argued that doing so would have been futile).

But other Texas courts have concluded that dismissal is not required when a plaintiff fails to comply with the Act. *See Cunningham v. Waymire*, 612 S.W.3d 47, 70 (Tex. App.—Houston [14th Dist.] 2019, no pet.); *Cummins v. Lollar*, No. 07-16-00337-CV, 2018 WL 2074636, at *8 (Tex. App.—Amarillo May 3, 2018, pet. denied) (mem. op.); *Warner Bros. Ent., Inc. v. Jones*, 538 S.W.3d 781, 812 (Tex. App.—Austin 2017), *aff'd on other grounds*, 611 S.W.3d 1 (Tex. 2020); *Hardy v. Commc'n Workers of Am. Local 6215 AFL-CIO*, 536 S.W.3d 38, 48 (Tex. App.—Dallas 2017, pet. denied); *see also MediaOne, L.L.C. v. Henderson*, 592 S.W.3d 933, 945–946 (Tex. App.—Tyler 2019, pet. denied) (acknowledging the court of appeals' split but declining to reach the issue).

[42] *Ante* at 10.

[43] *Ante* at 10–11.

9

been filed"[44] and several decisions of this Court "us[ing] the phrase in the same way."[45] The plurality does not respond, effectively admitting that its argument is flawed and that the concurring opinion is correct.

The plurality argues that *maintain only if* cannot mean what it says because the Act requires that "to challenge the sufficiency or timeliness of a [Request], the defendant must state the challenge in a motion to declare the request insufficient or untimely served not later than the 60th day after the date of service of the citation."[46] The plurality asserts: "The dissent does not explain how [this] requirement of a timely objection to timeliness remains viable under its view of the statute as mandating dismissal once limitations has expired."[47] To the contrary, I both can and do: an action can always be maintained if the defendant has a defense but does not properly raise it, except when the court lacks jurisdiction.[48] The Act's *maintain only if* language is not jurisdictional. Noncompliance with the Act is no more a bar to an untimely suit than is any other defense that the defendant neglects to assert.

Rather than hold that an action cannot continue when the plaintiff has made no timely Request, the plurality argues that the action can continue in an abated status because that is the

---

[44] *Ante* at 10–11 & n.35 (Boyd, J., concurring).

[45] *Ante* at 11 & n.36 (Boyd, J., concurring).

[46] TEX. CIV. PRAC. & REM. CODE § 73.058(c).

[47] *Ante* at 18.

[48] *See* TEX. R. CIV. P. 94 (requiring a defendant to plead "any . . . matter constituting an avoidance or affirmative defense"); *Kinnear v. Tex. Comm'n on Human Rights ex rel. Hale*, 14 S.W.3d 299, 300 (Tex. 2000) (per curiam) ("Immunity from liability, like other affirmative defenses to liability, must be pleaded, or else it is waived."). *But see Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–444 (Tex. 1993) ("Subject matter jurisdiction is never presumed and cannot be waived.").

Act's "process for addressing challenges to the required request".[49] The plurality acknowledges that "if the plaintiff cannot produce evidence of [a timely and sufficient] request, the plaintiff may not 'maintain' the suit".[50] But, according to the plurality, the suit is not dismissed. Rather, it is abated, and the plaintiff can "exit abatement" and move forward by "provid[ing] a written request in response to the plea in abatement."[51] The Act indeed contemplates that in certain abated cases, the plaintiff can proceed with litigation by making a Request,[52] but the Act does not suggest that a Request filed during abatement is timely long after the deadline for making it—the one-year statute of limitations—has passed.[53] The plurality is not deterred. The Act says that a Request "is timely *if made*" before limitations expires,[54] and  the plurality reasons that "[s]imply because a request 'is timely if made during the period of limitations for commencement of an action for defamation[]' . . . does not render a request served beyond the limitations period noncompliant."[55] Thus, for the plurality, *timely if made* means *timely whether or not made*, just as *maintain only if* means *maintain whether or not*. At least the plurality's misinterpretations of the Act are consistent.

An abatement may give a plaintiff time to cure any insufficiency in his Request, but it cannot roll back the clock and make timely a Request that would have been untimely before the abatement started. Yet that is precisely the plurality's view: "The suit recommences generally sixty

---

[49] *Ante* at 11.

[50] *Ante* at 12.

[51] *Ante* at 13.

[52] *See* TEX. CIV. PRAC. & REM. CODE § 73.062(c).

[53] *See id.* § 73.055(b) ("A request for a correction, clarification, or retraction is timely if made during the period of limitation for commencement of an action for defamation.").

[54] *Id.*

[55] *Ante* at 12.

days after the plaintiff provides the written request in response to the plea in abatement."[56] The requirement that a defamation action can be maintained only if the plaintiff has made a timely Request is fully satisfied if an untimely Request is made during an abatement. A plaintiff can ignore the Act's requirements for a timely Request, make an untimely one during abatement, and proceed to trial.

The better reading of the abatement provision—and the only one that gives the Act's *maintain only if* language any effect—is that it gives some defendants who do not receive a Request before suit is filed a short-fuse mechanism to force a Request from the plaintiff and perhaps pursue settlement. Because the case must be dismissed if the plaintiff has not made a sufficient Request within the one-year limitations period, abatement will not be an option in every case. The plurality worries that if a plaintiff's noncompliance with the Act results in dismissal, then defendants will be encouraged to sit back and wait until limitations has run. Some surely will. But even if the plurality were correct and the Act as written is bad policy, the plurality cannot legislate the Act out of existence, which is what it would do.[57]

Finally, the plurality argues that "[i]n concluding that dismissal was a statutorily allotted consequence [of noncompliance with the Act], the court of appeals failed to recognize that all roads under the [Act] lead to a loss of exemplary damages rather than dismissal."[58] Except that

---

[56] *Ante* at 13.

[57] Zoanni argues that she could not have obtained an abatement because the deadline for requesting one, 30 days after filing "an original answer", had long-since passed. Not so, the Court argues, because the defendant's first answer in a case is *the* original answer, but any later answer to new claims is still *an* original answer. *Ante* at 21. Because Hogan had filed a seventh amended petition ten days before trial, Zoanni's answer to its new allegations of other defamatory publications would restart the 30-day clock for her plea in abatement. This argument has not been previously mentioned in this litigation at any stage and could have far-reaching implications. In any event, it is not implicated by my position, and I need not address it.

[58] *Ante* at 13.

most roads are blocked. According to the plurality, the Act's exemplary-damages bar is a nullity. All a plaintiff needs to do to avoid it is to sue just before limitations expires, argue that he did not know of the defamation more than 90 days earlier, and still make a request. Actually, the plaintiff need not even make the request since, according to the plurality, the petition is itself a request.[59] In the end, as the plurality reads the Act, a plaintiff need hardly ever comply with the Act and need not attempt to mitigate his damages to maintain his action and recover exemplary damages.

\*      \*      \*      \*      \*

As the plurality reads the Act, its provisions accomplish essentially nothing. Though compliance with the Act is not difficult, imposing any different or unusual statutory requirements on one type of common-law action can be unexpected and can easily have unintended consequences. That is especially true here, where, even though mitigation of damages is a very sensible and generally applicable rule, the common law has not succeeded in applying it in defamation actions as in other actions, and its source is now a special, recently enacted statute. The difficulties are that mitigation in defamation actions is usually within the defendant's sole control and the plaintiff can do little more than ask, protagonists have little natural inclination to work toward mitigation, and most people who believe themselves to have been spoken of falsely or accused of lying would rather litigate than mitigate. But how to meet these difficulties is the Legislature's choice, and it has made that choice in the Act. A defamation action may be maintained only if there has been compliance with its requirements. Maybe that choice was flawed.

---

[59] *Ante* at 12 n.1. Section 3(d) of the Uniform Act provides just that: "In the absence of a previous adequate request, service of a [summons and complaint] stating a [claim for relief] for defamation and containing the information required in subsection (c) constitutes an adequate request for correction or clarification." UNIF. ACT § 3(d). The Legislature conspicuously omitted this provision from the Texas Act.

But whether the Legislature's choice was apt is not a judicial decision. The plurality would remove all concern that a claim it would consider deserving could be lost by judicially repealing the Act. We're not quite all textualists.

The Act states: "A person may *maintain* an action for defamation *only if*: (1) the person has made a timely and sufficient request for a correction, clarification, or retraction from the defendant; or (2) the defendant has made a correction, clarification, or retraction."[60] I respectfully submit that these words, whether in isolation or in context, considering the Act's purpose or ignoring it, and with or without regard to policy, simply cannot fairly be read to provide the exact opposite: that a person need not make a timely Request for a Change compliant with the Act to maintain an action for defamation all the way to judgment.

Accordingly, I respectfully dissent.

_____
Nathan L. Hecht
Chief Justice

**OPINION DELIVERED:** June 4, 2021

---

[60] TEX. CIV. PRAC. & REM. CODE § 73.055(a)(1) (emphases added).

14